THE SNARE & TRIEST COMPANY, Appellant, *v.* THE CITY OF NEW YORK, Respondent.

First Department, March 19, 1920.

Contracts — suit by municipal contractor to recover damages for breach of contract respecting the strengthening of the East river bridge, city of New York — contract construed and items of damage considered — evidence not establishing breach of contract or right of plaintiff to recover.

In an action against the city of New York brought by a municipal contractor who had engaged to strengthen the end spans of the Williamsburgh bridge over the East river, the plaintiff alleged due performance and claimed, not for extra work and materials furnished, but upon the theory that the defendant was guilty of a breach of contract by requiring the plaintiff to

do work not embraced in the contract or plans and specifications made part thereof, and was compelled by the engineer in charge to do work not contemplated by the plans, some of which was of an experimental nature and some of which was caused by errors, etc., on the part of the engineer. The plaintiff set out thirty-one items of alleged damage, but the defendant denied the breach of contract and alleged an accord and satisfaction by the acceptance of payment by the plaintiff under the contract and payment for certain extra work. Contract construed and items of damage claimed considered in the light thereof, and *held*, that the plaintiff is not entitled to recover either for extra work, or for breach of contract, and that its claims should not be allowed, as the items of damage were clearly incidental to the performance of the contract and, therefore, within its contemplation.

LAUGHLIN, J., dissents.

APPEAL by the plaintiff, The Snare & Triest Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 20th day of April, 1916, upon the dismissal of the complaint by direction of the court after a trial at the New York Trial Term, and also from an order entered in said clerk's office on the 24th day of April, 1916, denying plaintiff's motion to set aside the direction for a dismissal of the complaint and for a new trial made upon the minutes.

*John C. Wait* of counsel [*Howard G. Wilson* with him on the brief], for the appellant.

*Willard S. Allen* of counsel [*John F. O'Brien* and *John F. Collins* with him on the brief; *William P. Burr, Corporation Counsel*], for the respondent.

MERRELL, J.:

This is an appeal by the plaintiff, The Snare & Triest Company, from a judgment entered upon the dismissal of plaintiff's complaint at Trial Term, the plaintiff also appealing from an order denying its motion to set aside the direction of a dismissal of the complaint and for a new trial.

The plaintiff is a domestic corporation engaged in fabricating and erecting steel structural work. In its complaint it alleges that on or about June 16, 1911, the plaintiff and the defendant, the city of New York, by its commissioner of bridges, duly entered into a written contract for the strengthening of the end spans of the Williamsburgh bridge over the East river between

the boroughs of Manhattan and Brooklyn. The plaintiff alleges due performance of the contract on its part and that the work was fully completed and delivered into the possession of the defendant, and accepted by said defendant on or about June 15, 1914. The contract provided that for furnishing all materials, plant, tools, labor, etc., for the strengthening of the end spans of said bridge the plaintiff contractor should receive the gross sum of $544,540, including the cost of inspection of the steel at the mills, shops and in the field, taken at an agreed price of $1.20 per net ton. For caisson work and concrete in the foundation piers under panel point 20 of each end span, between the actual foundation bed and a horizontal plane forty-five feet below mean high water where the foundation beds are below said plane, based on an horizontal section of concrete thirty-eight feet by thirty-eight feet for each of the four piers, the contractor was to receive in addition $15 per cubic yard. The plaintiff alleges and it is admitted that certain additional work was ordered in writing during the performance of said contract and pursuant to its terms, for which the plaintiff received and accepted the sum of $3,500. The plaintiff alleges full compliance and performance of the contract by it in conformity with the plans and specifications therein contained and according to the direction of the defendant's engineer during the progress of the work. The plaintiff further alleges that the engineer did not confine his directions to having said labor and material furnished and performed in conformity with the specifications and plans made a part of the contract, but, assuming authority not granted him by the terms of the contract, arbitrarily extended and enlarged the contract and directed the plaintiff to perform work outside of the contract and at variance with the plans and specifications; that under such assumed authority the defendant, by its said engineer, departed widely from the terms and spirit of said contract and violated the same accordingly; that the interpretation of said engineer was not acquiesced in by the plaintiff, the plaintiff objecting thereto and protesting against such variation when made, but that plaintiff was obliged to and did perform the contract as directed by said engineer to avoid the charge of refusing to perform said work; that certain work and materials were furnished by plaintiff to defendant, under such direction

and compulsion of said engineer, which plaintiff alleges to have been outside of the contract requirements and not done pursuant to and in conformity with the specifications and plans for said work. Plaintiff alleges that said contract had for its attainment a certain object and result, to wit, strengthening the end spans of the Williamsburgh bridge, which work was to be accomplished according to definite plans and methods, all as outlined and specified in the contract, and that plaintiff was obligated to follow the same strictly in accordance with the provisions of said contract. The plaintiff further alleges that it was unable to follow said plans and specifications strictly, and was not permitted to do so, but was directed and required by said engineer to perform and furnish the extra work and materials under claim of said engineer that the same were a part of the work to be performed by the plaintiff under the contract. It is the claim of the plaintiff that the several items of work and material done and furnished for the defendant in the progress of said work which plaintiff alleges could not properly be deemed to be embraced in said contract work, under a rightful interpretation of the contract, are thirty-one in number. Plaintiff alleges that portions of the work under the contract were made more burdensome and costly to plaintiff by reason of the wrongful acts of the defendant and its said engineer and by reason of arbitrary changes made in the work by the defendant and by reason of errors of defendant, and that the plaintiff was required to do much of the work a second time, causing plaintiff great delay in the prosecution of the work upon the contract and its completion; that said items of extra work thus performed by the plaintiff amounted in the aggregate to $78,213.72, for which amount judgment is demanded by the plaintiff against the city. The actual amount of the several items for alleged extra and unnecessary work and materials furnished by the plaintiff is $30,645.69. The balance of plaintiff's claim, $47,568.03, is made up of overhead expense incurred by the plaintiff during a delay of eighteen and a half months occasioned by plaintiff's being compelled to perform such extra work. These overhead charges are made up of maintenance of plant and watching, $17,761.11; fuel, $4,918.13; interest on money invested, $9,250· liability insurance, $5,485.74; premium on bond, $3,538.69; and some other items

of overhead expense.    Plaintiff seeks to recover herein, not for extra work and materials furnished, but upon the alleged breach of the contract by the defendant.    Plaintiff's alleged damages may be roughly divided into six groups:

1. Damages occasioned plaintiff by being compelled to do work over a second time that had been done once.

2. Damages by reason of erroneous lines and grades given by the defendant and its engineers.

3. Damages from increased cost of work due to changes in plans requiring plaintiff to do work not shown on the plans nor called for by the contract.

4. Damages occasioned by unreasonable requirements of the defendant for temporary work.

5. Damages sustained by plaintiff by the bridge department experimenting at plaintiff's expense.

6. Damages caused by delays of defendant in connection with plans and schedules, and by reason of experiments at the plaintiff's expense, and on account of doing work over a second time; also on account of changes in plans, and on account of erroneous lines and grades and unreasonable requirements for temporary work; for boring out a certain pin required to be replaced by one of larger diameter.

The plaintiff has already received for the performance of the contract the sum of $606,158.32.    This amount includes the original contract price, together with $3,500 of extra expense allowed by the defendant, together with certain other items of extra expense including an item of $55,903.05 for caisson work and concrete in the foundation piers.

In its answer the city denied the alleged breach of contract alleged in plaintiff's complaint and denied that it was indebted to plaintiff in the sum therein set forth or in any sum whatever, and alleged payment in full and satisfaction of every claim due and owing to the plaintiff.    As a second defense to the alleged cause of action set forth in the complaint the defendant alleged the making of the contract in question and its acceptance and performance by plaintiff, and the acceptance of the work by the defendant.    To meet the claim of the plaintiff the defendant invokes certain provisions of the contract which it insists precludes any recovery by the plaintiff herein.    The provisions upon which defendant relies are as follows:

" (D) To prevent all disputes and litigations, the Engineer shall, in all cases, determine the amount or the quality of the several kinds of work which are to be paid for under this contract, and he shall determine all questions in relation to said work and the construction thereof; and he shall, in all cases, decide every question which may arise relative to the execution of this contract on the part of the Contractor, and his estimate and decision shall be final, conclusive and binding, and such estimate and decision, in case any question shall arise, shall be a condition precedent to the right of the Contractor to receive any money under this agreement."

" (F) Neither the Department of Bridges nor The City is to be held responsible for the estimates of the quantities of material to be furnished or work to be done. The Contractor has judged for himself as to such estimates as well as to the conditions to be met which will affect both the cost and time required for the execution of the work, and assumes all responsibilities therefor.

" (G) All the work, labor and materials to be done and furnished shall be done and furnished strictly pursuant to and in conformity with the specifications and plans therein contained or hereto annexed and numbered for identification and according to the directions of the Engineer, during the progress of the work, and said specifications and plans, together with the proposals for bids or estimates, the bid or estimate and the bond are hereby made and declared a part of this contract."

" (M) The specifications and plans and drawings are intended mutually to explain each other, and anything which is shown on the plans and drawings, and not mentioned or referred to in the specifications, or which is referred to in the specifications and not shown on the plans and drawings, shall be considered as being both so shown and mentioned or referred to, and shall be done and performed accordingly.

" (N) All the work contemplated and described in this contract and in the specifications and drawings shall be done to the satisfaction of the Engineer who shall be sole judge as to the fitness of materials, and shall have the right of correcting any errors or omissions in the specifications and drawings, when such correction is necessary for the proper completion of the work herein stipulated and for the proper fulfillment of their

intention; the action of such correction to date from the time that the Engineer gives due notice thereof, it being further understood that such correction shall not increase the price for the work complete as herein agreed upon."

" (AA) The Contractor shall receive the following price as full compensation for furnishing all the labor and all the materials, which he has hereinbefore agreed to furnish, and in all respects performing and completing the whole of the work which he has hereinbefore agreed to perform and complete, to wit:

" (a) For furnishing all materials, plant, tools, labor, etc., for the strengthening of the end spans of the Williamsburgh Bridge over the East River, between the Boroughs of Manhattan and Brooklyn, herein specified, the sum of Five hundred and forty-four thousand, five hundred and forty dollars ($544,540) including the cost of inspection of the steel at the mills, shops and in the field taken at an aggregate cost of $1.20 per net ton.

" (b) For caisson work and concrete in the foundation piers under Panel Point 20 of each End Span between the actual foundation bed, and a horizontal plane 45 feet below Mean High Water, where the foundation beds are below said plane, based on a horizontal section of concrete 38 feet by 38 feet, for each of the four piers, the sum of Fifteen Dollars ($15.00) per cubic yard.

" In case the aforesaid foundation beds shall be established by the Engineer at a plane above 45 feet below Mean High Water there shall be deducted from the lump sum specified under (a) an amount in dollars obtained by multiplying the number of cubic yards contained in the volume between the actual foundation beds and a horizontal plane 45 feet below Mean High Water by the above price per cubic yard of caisson work and concrete.

" The above prices cover the cost of all work, labor, materials, tools, plant and appliances necessary to complete the entire work, as specified, the cost of tests and inspections as specified, and the removal of all debris, temporary work or appliances, and of all obstructions necessary to the performance of the work."

" (FF) The action of the Engineer, by which the Contractor is to be bound and concluded according to the terms of this

contract, shall be that evidenced by his final certificate, all prior certificates or estimates upon which partial payments may be made being merely estimates, and being made for an amount that shall represent the ratio that the cost of the work done and materials furnished bears to the cost of the total amount of work and materials required by, and to be furnished under the contract, and which estimates are subject to the correction of such final certificate, which may be made without notice to the Contractor thereof, or of the measurements upon which the same is based.

*" Specifications*

" 2. The plans and specifications of this contract are intended to co-operate, so that any work exhibited in the plans and not mentioned in the specifications, or *vice versa,* shall be done in the same manner as if mentioned in the specifications and set forth in the plans to the true intent and meaning of said plans and specifications or either of them."

" 4. All dimensions shall be taken from the drawings, and the Contractor will be held responsible for any deviation from these dimensions, and from the lines and levels furnished by the Engineer.  The Contractor will, however, be required to verify their correctness, and should he find what he considers an error, to bring it to the attention of the Engineer.

" 5. Any question as to the intent or meaning of these specifications and the drawing shall be referred to the Engineer, whose decision shall be final and binding on all parties.

" 6. The Engineer shall have the right of correcting any errors or omissions in the specifications and drawings, when such correction is necessary for the proper completion of the work herein stipulated and for the proper fulfillment of their intention; the action of such correction to date from the time that the Engineer gives due notice thereof.

" 7. Wherever any feature of the work is not fully set forth in these specifications, it must be understood that the same shall be governed by the rules of the best modern practice."

" 11. In general, this contract and the plans and specifications forming part thereof will cover the furnishing of all material, plant and labor necessary for executing and completing the strengthening of the trusses of the End Spans

(' Connecting ' and ' Cantilever ' Spans), including the erection of additional members as shown on the plans; the construction of new towers under Panel Points 10 and 20 of each End Span, including the masonry piers and their foundations, and the construction of additional masonry on the present piers of the existing ' Intermediate ' Towers as shown on Drawing No. 7004."

The following provision of the contract is also invoked by the defendant as limiting claims of additional work or materials to be allowed the contractor in the prosecution of its work:

" (L) No claim for additional work or materials shall be made by or allowed to the Contractor, unless before the performance of such additional work the Commissioner shall have first authorized the same in writing and the same shall have been done or furnished under a written order from the Commissioner given before the performance of such additional work or the furnishing of such additional materials. The aggregate price to be paid for additional work or materials so authorized or ordered shall not exceed five per cent. (5%) of the contract price or total cost of the work and materials.

" All claims for additional work or materials in any month shall be made to the Commissioner, in writing, before the 15th day of the following month, and if the Contractor fails to make such claim within the time required, the rights of the Contractor to pay for such additional work or materials shall be deemed to have been waived and forfeited."

The defendant further alleges the acknowledgment and acceptance by plaintiff of the additional work amounting to $3,500, the performance thereof by the plaintiff and its payment by the defendant therefor. The defendant alleges that the payment of this $3,500 was in full of all work performed under the order of the commissioner of bridges, and that such payment was made to and was received by the plaintiff in full accord and satisfaction and in full discharge of all moneys earned by plaintiff under said order for additional work.

Attached to the complaint is a statement of the thirty-one items of extra labor and materials which plaintiff claims to have rendered and furnished and upon which it bases its claim for damages.

Item No. 1 is for extra cost of portal work, $446.82. It is apparent that this item was embraced in the extra work

furnished by the plaintiff in conformity with the order of the bridge commissioner above referred to and for which the plaintiff received in the aggregate $3,500. This first item was stricken out upon the trial.

Items 5, 14, 20, 22, 16, 25 and 29, in Schedule A, are claimed by plaintiff to be for extra work which it was compelled to do a second time after it had been done once. Subdivision 9 of the specifications provides as follows:

" 9. The Engineer shall have authority to reject at any stage of the work any material or workmanship which, in his opinion, is unfit for the work and not in accordance with these specifications, even though, through oversight or otherwise it has passed previous inspection, and the same shall be made good at the cost of the Contractor."

Of these items for work which plaintiff claims to have been compelled to do a second time, items 5 and 20, amounting respectively to $169.32 and $45.70, were for pulling top of tower No. 20 together, and separating, as directed, and re-erecting scaffolds at tower No. 20 for that purpose. At panel point 20 two towers were to be erected, each standing upon four legs. In order to engage and hold overhead bridge trusses these towers were required to be a certain distance apart. After the towers had been pulled together and the legs riveted to the concrete work it was discovered that the towers had not been properly located on the trusses; that they were too close on one side and too far apart on the other. To remedy this the plaintiff was required to cut the rivets and to take out the bolts disconnecting the towers in the middle and pull them over. This was done, and afterward the towers were riveted to the truss. For this work the plaintiff claims it should be paid the sums above mentioned, insisting that the extra work was occasioned by mistake of the defendant's engineer. It seems to me that the defendant's engineer could properly require the contractor to properly place said towers. The plaintiff might have avoided this extra work by foresight in examining the towers before the legs were riveted up. A great deal of complaint all through plaintiff's brief is made of mistakes charged to the defendant's engineer. It must be remembered that this work was largely experimental at best.

First Department, March, 1920.                    [Vol. 191.

It was probably beyond human ability to determine just what might develop during the prosecution of the work. It was a much more technical job than building new, and involved the replacing and adding of various units in order to strengthen the existing structure.

Item 22 of the schedule of plaintiff's alleged claims for damages was for taking out a hanger after it had been riveted up to erect diagonal. This was a part of the new work brought on in accordance with the plans. In its erection the contractor was obliged to cut out rivets connecting one-half of the hanger that interfered with driving of rivets in the diagonal, take it down and then after the rivets had been driven in the diagonal, re-rivet the hanger in place again. I have been unable to discover any evidence of any direction on the part of the defendant upon which this claim of the plaintiff is founded.

Items 14 and 16 were for cutting apart certain parts of the panels and resplicing old members. In doing this work it was found that the plan and member as manufactured were insufficient. One of the existing diagonals was in the way of the work and the contractor was directed to take out the old diagonal that interfered. This the contractor did and permitted the installation of the new work. It is claimed that by reason of the extra work in the accomplishment of these two items the plaintiff suffered damages in the sum of $514.61 and $308.40, respectively. This extra work might easily have been obviated had the contractor, previous to attempting it, gone over the plans carefully and determined whether or not the members to be installed would fit.

Item 25, for which the plaintiff claims $1,522.44 damages for labor and materials, was for changing bushings at panel point 20 on the Brooklyn end of the bridge. About a pin which was required to be inserted at that point certain bushings were required. Owing to the weight of the bridge the hole through the different members through which the pin was to pass was not precisely straight, and it was, therefore, necessary to have a manganese bronze bushing surround the pin, and as the hole was not straight it was required that this bushing be cut into sections and eccentrically bored to correspond with the difference between the hole and the pin. For this work the contractor was allowed the expense of actually machining the

bushings and taking the pin out and putting it back again, but the contractor claims the additional sum of $1,522.44 for extra work. This work became necessary, due either to a warping of either the bridge or the new piece that was manufactured by the plaintiff. The testimony is not clear upon this subject, and, therefore, the claim should not be allowed.

Item 29 was for removing nuts at lower panel 30, occasioned by changes made by the department of bridges. I think this item was merely incidental to the prosecution of the work by plaintiff for which it should not be permitted to recover. All of the work and materials mentioned in these items 5, 20, 14, 16, 22, 25 and 29 were clearly within the contract. The contract provided that the plaintiff should furnish all labor, plant and materials at its own cost and expense, necessary and proper for the purpose of strengthening these end spans of the Williamsburgh bridge; that the same should be done in a good, substantial and workmanlike manner, and that the plaintiff should perform the necessary work of strengthening said bridge to the " *satisfaction of the Engineer and of the Commissioner.*" To avoid all disputes and litigations, the contract provided that the engineer should, in all cases, determine the amount or quality of the several kinds of work which were to be paid for under the contract, and that said engineer should determine all questions in relation to said work and the construction thereof, and should in all cases decide every question which might arise relative to the execution of the contract on the part of the contractor; that the engineer's estimate and decision should be final, conclusive and binding, and that such estimate and decision, in case any question should arise, should be a condition precedent to the right of the contractor to receive any money under the agreement.

It was further provided that no claim for additional work or materials should be made by or allowed to the contractor, except the same be first authorized in writing by the commissioner of bridges or furnished under the written order of said commissioner given before the performance of such additional work or the furnishing of such additional materials. The contract provided that in the aggregate the contractor should be paid for such additional work and material so authorized or ordered not to exceed five per cent of the contract price or total

cost of work or material. It was also provided by the contract that all claims for additional work or materials in any month should be made to the commissioner in writing before the fifteenth day of the following month and failure on the part of the contractor to make such claim worked a waiver and forfeiture of the contractor's rights to pay for such additional work and materials. And, as before stated, the specifications provided that the engineer was authorized at any stage of the work to reject any material or workmanship which in his opinion was unfit for the work, or at variance with the specifications, " *even though, through oversight or otherwise it has passed previous inspection, and the same shall be made good at the cost of the Contractor.*" Under this provision I am unable to see how the city can be held for the extra work claimed to have been performed by this plaintiff. In the prosecution of such work the highest degree of skill and care was required and in the very nature of the work, along unusual lines, changes were bound to occur which would only make themselves manifest during the progress of the work. It was the clear intent of the contract to provide for such unavoidable changes. In a work of such magnitude as that provided by this contract it is strange that there should not have been more than the thirty-one items claimed by the plaintiff as extra work. Those items, some of them trivial in amount and in detail, appear to have been seized upon by the plaintiff as the basis of a claimed right of recovery against the defendant. It is very evident from an examination of the record that from the very first the plaintiff thought more of laying the foundation for a future claim for damages or extra work than it did of the honest performance of its contract. By the terms of this contract it was to make this bridge safe, and for its work it was to receive nearly $550,000, besides caisson work specified in the contract. It has already received $606,158.32, and it now seeks, not five per cent, which was the limit of the contract for extra work, but about fifteen per cent for extra and additional labor and materials which it claims to have furnished in the performance of its contract. This it is very adroitly claiming, not for extra work, but for damages which it claims to have sustained by reason of defendant's breach of its contract.

Items 2, 3, 8, 9, 18 and 27 are claimed by plaintiff as damages

by reason of erroneous lines and grades given by the defendant and its engineers. The plaintiff was required to follow the dimensions contained in the drawings, plans and specifications, and in deviating therefrom must be held responsible. In section 4 of the specifications it is provided:

" 4. All dimensions shall be taken from the drawings, and the Contractor will be held responsible for any deviation from these dimensions, and from the lines and levels furnished by the Engineer. *The Contractor will, however, be required to verify their correctness, and should he find what he considers an error, to bring it to the attention of the Engineer.*"

Had the plaintiff here verified the correctness of the plans and dimensions by measurement it would have discovered the errors of defendant's engineers, if such there were, and have avoided the increased labor and materials which it was required to perform and furnish in order to carry out said contract. Of the items last mentioned, item 2 is for $417.14, changes in column base tower No. 20. Beneath panel point 20 on the bridge the plans provided for the erection of a new tower. A masonry pier was built and anchor bolts set in the masonry according to the lines and locations given by the defendant's engineers. These bolts were to engage and hold the four feet of the tower. The center bolts for the steel work were located by the engineer. In the prosecution of the work it was found that the center bolts for the steel work were located wrong. They were out of position about an inch and a half. The defendant's engineer directed that the hole in the base of the column be gouged out and the steel work moved over to the new location. The location of the bolts was shown upon the contract drawings. The plaintiff was negligent in failing to check up and verify the location of said bolts from said contract drawings. On cross-examination plaintiff's witness Werner admitted that the bolts might have been located and properly placed in the masonry from the contract drawings had they been consulted. The plaintiff deviated from the contract drawings and apparently made no examination thereof and relied entirely upon the position of the bolts located by the defendant's engineer. It was negligent in this respect and should not be permitted to hold the city liable for expense arising from its negligence.

The plaintiff had every opportunity by measurements and investigation to ascertain whether the plans and location of the new work were correctly stated by the defendant's engineer. It was required under the terms of the contract to verify the correctness of all dimensions, and to call to the attention of the engineer any mistake therein. It was stated in clause F of the contract as follows:

" (F) Neither the Department of Bridges nor The City is to be held responsible for the estimates of the quantities of material to be furnished or work to be done. *The Contractor has judged for himself as to such estimates as well as to the conditions to be met which will affect both the cost and time required for the execution of the work, and assumes all responsibilities therefor.*"

It is difficult to see under this provision how the plaintiff is in position to complain for mistakes which were made under the plans submitted. (*Dunn* v. *City of New York,* 205 N. Y. 342; *Leary* v. *City of Watervliet,* 222 id. 337.)

Items 4, 10, 7, 12, 21, 16, 19, 3, 8, 9, 18 and 27 are claimed by plaintiff as damages for cost of doing work not shown on the plans but required by defendant's engineers under a misconstruction of the contract. The extra work involved in these items was probably due to mistakes or omissions of defendant's engineer, but the contract provided by paragraph N as follows:

" (N) All the work contemplated and described in this contract and in the specifications and drawings shall be done to the satisfaction of the Engineer, who shall be sole judge as to the fitness of materials, and shall have the right of *correcting any errors or omissions in the specifications and drawings,* when such correction is *necessary for the proper completion of the work herein stipulated and for the proper fulfillment of their intention;* the action of such correction to date from the time that the Engineer gives due notice thereof, it being further understood that such correction shall not increase the price for the work complete as herein agreed upon."

And by subdivision 6 of the specifications it is provided that the engineer shall have the right of correcting any errors or omissions in the specifications and drawings, when such is necessary *for the proper completion of the work stipulated and for the proper fulfillment of their intention.* These clauses permitted the corrections which were made of errors and

omissions in the specifications and drawings, and were well within the power and prerogatives of the engineer. The evidence shows that such corrections were absolutely necessary for the proper completion of the work. (*Kinser Construction Co. v. State of New York*, 204 N. Y. 381.)

Items 6, 17, 11, 24, 28, 30, 31, 13 and 15 are for increased labor and materials furnished on account of unreasonable, arbitrary and uncalled-for requirements of defendant and its engineers with respect to the manner in which the work should be done. The work under this contract was prosecuted while traffic was passing over the bridge structure, and under the item of the contract requiring the reduction of danger to a minimum I think the requirement of the engineers was well within their authority. It was provided by the contract that the defendant's engineer had full power to determine the manner in which the contract was performed and was in all cases to decide every question which might arise relative to the execution of the contract. The items last above mentioned all relate to the manner of the performance of the work and were well within the discretion of the engineer. (*Cameron-Hawn Realty Co. v. City of Albany*, 207 N. Y. 377; *Allen v. City of Oneida*, 210 id. 496.)

Item 24 was a claim for $1,613.77 for locking chord members together at No. 29.

Item 28 was additional work around lower 29 in connection with a boring machine used for boring out an old pin preparatory to the installation or insertion of a larger pin. This item amounted to $3,699.32. Item 30, for $5,500, was for excess cost of boring machine over the one proposed by the contract. Item 31 was for $1,219, and was for excess cost of operating the boring machine over the one proposed in the contract. These items all relate to labor and materials required in connection with the releasing of the old pin and the boring and installation of the new pin at panel No. lower 29. The specifications required that a ten-inch pin then in place be replaced with one thirteen inches in diameter of nickel steel in such manner as not to disturb the true relative position of the members held by said pin, under the vibration and strains of traffic, wind and other causes. The engineer of the bridge department construed the specifications as requiring the boring out of the ten-inch pin then in place followed by the boring tool and by the new pin of

thirteen inches in diameter. The contractor disclaimed ability to follow the directions of the engineer. Finally a machine was procured whereby the contractor was able to bore out in small borings the ten-inch pin until it collapsed and then by making a larger hole insert the thirteen-inch pin. It seems to me that so long as the contract provided for the insertion of this pin the plaintiff should not receive any extra pay by reason of the added cost of fitting such in place.

Most of the remaining items of plaintiff's claim were for alleged experimental work imposed upon the plaintiff by the defendant and its engineers in relation to jacking up for the insertion of new pins in place of weak ones removed. It was clearly a part of the contract of the plaintiff to install the new pins and it should be held to bear whatever experiments were necessary and incidental to the accomplishment of such work.

It, therefore, seems to me that these claims made by the plaintiff should not be allowed.

The plaintiff claims a right of recovery as for breach of contract. If it recovers at all it must be upon the theory that the alleged claims are for extra work. The plaintiff did not procure the required authorization of the commissioner for the performance of such extra work or the furnishing of such additional materials, and it seems to me that plaintiff is foreclosed from enforcing its claims by the provisions of paragraph L of the contract between the parties. The plaintiff expressly contracted to furnish all the labor, plant and materials at its own cost and expense necessary or proper for the purpose and in a good and substantial and workmanlike manner to perform the necessary work required to accomplish the strengthening of said bridge. Plaintiff contends, however, that its claim is not for extra work or materials furnished under the contract, but is for breach of contract by the city and its representatives whereby the plaintiff has suffered damages. Throughout the prosecution of the work and as its extra services were rendered and extra materials furnished it is evident that the plaintiff was attempting to bring itself within the decision of *Borough Construction Co.* v. *City of New York* (200 N. Y. 149). I think the plaintiff has failed in this respect, and that the facts in the case at bar are clearly distinguishable from those outlined by Judge HISCOCK in his opinion in *Borough Construction*

*Co.* v. *City of New York.* That action was brought to recover the value of extra materials furnished and extra labor done in the construction of a sewer under contract with the city of New York in the borough of Brooklyn. It was the claim in that case that a recovery should have been permitted upon the theory of a breach of the contract on the part of the city in requiring the Borough Construction Company to vary the provisions of the contract in two respects, one, as to the use of Portland cement, not only below a certain level of the sewer as required by the contract, but also in obedience to the insistence of the engineer that such Portland cement should be used above said level. The cement was much more expensive than that which might have been used under the terms of the contract. The second claim was that during the progress of the work the contractor was required to keep the sewer open and to furnish light and facilities for lowering an automobile for its inspection. In discussing the question as to whether or not the plaintiff in that case might claim as for breach of contract, Judge HISCOCK says: " These considerations seem to suggest the general rule that where the municipal representative, without collusion and against the contractor's opposition, requires the latter to do something as covered by his contract, and the question whether the thing required is embraced within the contract is fairly debatable and its determination surrounded by doubt, the contractor may comply with the demand under protest and subsequently recover damages even if it turns out that he was right and that the thing was not covered by his contract, and *on the other hand, if the thing required is clearly beyond the limits of the contract, the contractor may not, even under protest, do it and subsequently recover damages.* While this rule is only a general one and may not be determinative of every conceivable case, it seems to furnish a test by which to decide phases of the question which will ordinarily present themselves, and it may both be illustrated by and applied to the facts established in this case."

The complaint alleges that the work, materials, etc., for which plaintiff seeks to recover were not called for by the contract. How then can it be said that said claims were not for extra work? In *Molloy* v. *Village of Briarcliff Manor* (145 App. Div. 483), in distinguishing the *Borough Construction*

*Company* case, Mr. Justice CARR wrote as follows: " It is contended, however, by the plaintiff that this branch of the work in question was not ' extra work ' in the sense of the contract provisions relating to written orders, but falls within the recognized exception that where a contractor is directed by the engineer to do over again work already done properly, he may under protest comply with the directions of the engineer and recover thereafter the reasonable value of the work on the theory of a breach of contract. (*Gearty* v. *Mayor, etc.*, 171 N. Y. 61; *Lentilhon* v. *City of N. Y.*, 102 App. Div. 548; affd., 185 N. Y. 549; *People ex rel. Powers & Mansfield Co.* v. *Schneider*, 191 id. 523.) That this exception to the general rule may apply, it is necessary that there should be *fair room for debate* as to whether the directions of the engineer were or were not justified by the contract provisions. *Where such directions are unquestionably beyond the contract requirements*, then the exception does not apply. (*Borough Construction Co.* v. *City of New York*, 200 N. Y. 149.) As to this specific item of the plaintiff's claim, that is, the ' rehandling at Holdens,' there can be no reasonable contention that it was not required to be done under the contract and specifications. In fact, neither party to this controversy asserts that there was any contract requirement to do it. It was clearly extra work, and can be recovered for only under the conditions of the contract as to extra work. But the plaintiff has not brought this item within the expressed conditions."

If the plaintiff is right in the allegation of its complaint, that the work and materials for which claim is made were not called for by the contract, then surely they must be regarded as extra work and the provisions of the contract with relation to the payments for extra work become operative and govern the same. If the work was covered by the contract, then surely there can be no recovery, and if it is decided that the work was outside the contract, then under the *Borough Construction Company* case there can be no recovery because the claim is for extra work.

I am of the opinion that the court at Trial Term did not err in dismissing the plaintiff's complaint, and that it appears that the items of which the plaintiff is complaining were not such as to justify a recovery under the terms and conditions of

the contract.    It seems to me that those items were clearly incidental to the performance of the contract, and, therefore, within its contemplation.    If they be regarded as outside of the contract and extra work which the plaintiff was compelled to render, then there can be no recovery under the plain provisions of the contract, which required as a preliminary to the performance of such extra work the order of the commissioner of bridges.

As I view the contract between the parties, the ultimate thing to be done was the strengthening of the end spans of the bridge.    There could be no complete performance of the contract until that end was accomplished.    To that purpose, it is true, certain plans and specifications were prepared, all of which, under the terms of the contract, were subject to change as might be found necessary during the progress of the work. The contract expressly provided for such changes, and it was the duty of the contractor to deviate from the plans and specifications and to correct errors in the engineering in the preparation of such plans and specifications, not alone as required by the city's engineer, but as good engineering and proper construction might require for the proper completion of the work of strengthening the spans.    The contract clearly contemplated the accomplishment of its purpose and not merely the doing of work in accordance with a given set of plans.    It seems to me, therefore, that the claims which plaintiff asserts for labor and material which it furnished, were merely incidental to the performance of the contract.    If the plaintiff contractor was only required to follow the plans and if the performance of the contract on its part was accomplished by doing the work in strict conformity to such plans and specifications, regardless of whether the ultimate object was thereby attained, then clearly the requirement that the contractor do certain of the work over in an entirely different manner was for the performance of extra work and the furnishing of extra material for which the plaintiff cannot recover here, without showing that it was furnished upon the order of the bridge commissioner.

What was this contract?    Was it to accomplish the definite purpose of strengthening the end spans of the bridge, or was it to do certain work in a particular manner and furnish materials

in accordance with specific plans? If it was the former, then the plaintiff is seeking to recover for work and materials incidental to the performance of the contract. If the latter, then the requirement to do the work a second time in an entirely different manner from that called for by the plans and specifications was extra work beyond the contract requirements and not fairly debatable or doubtful.

Every claim for which the plaintiff seeks to recover herein must be classified either as for work or material furnished as a part of its performance of the contract under its broad terms, or as remuneration for extra work clearly and indubitably outside the contract. In neither case can the plaintiff recover therefor.

The case of *Gearty* v. *Mayor, etc.* (171 N. Y. 61), relied upon by the appellant as authority for a recovery herein and upon which the Court of Appeals bases the suggestion that there may be a recovery as for breach of contract for items not clearly to be regarded as outside the contract or beyond its provisions, is not, I think, pertinent to the facts in the case at bar. In that case the plaintiff had a contract with the city of New York to lay certain granite block paving upon a concrete foundation in the roadway on transverse road No. 4, crossing Central Park at Ninety-seventh street from Fifth avenue to Central Park West. After the work had been practically completed by the contractor and accepted by the defendant's engineers, and he had been paid seventy per cent of the contract price, the contractor was required to tear up the work which he had performed, and which he insisted was properly done, and to replace the same with new work " in accordance with the specifications." The plaintiff objected vigorously thereto, insisting that the work had been properly done under the terms of the contract, but proceeded to take up the work and lay it over as required. Plaintiff had been paid upon the certificate of the commissioners of the department of public parks that they had examined the work and that it had been performed in accordance with the plans and specifications and according to the certificates of the officers of the department of parks duly appointed to supervise the same. The court held in that case that the plaintiff could recover, not for extra work, but for breach of contract, and that his complaint was improp-

erly dismissed, *and that the plaintiff was entitled to go to the jury on the issue as to whether or not the work was properly done in the first instance.* In the case at bar the charges which the plaintiff makes are not for work done to replace that theretofore properly accomplished, as concededly the work which was removed was entirely inadequate for the purpose intended. The claim of the plaintiff in this case is to be remunerated because of errors made by defendant's engineers necessitating the doing of the work a second time. This, it seems to me, was either incidental to the performance of the contract and within its scope or was extra work for which a recovery cannot be had under the contract in question.

The judgment and order appealed from should be affirmed, with costs.

CLARKE, P. J., and DOWLING, J., concur: LAUGHLIN, J., dissents.

Judgment and order affirmed, with costs.