ROBERT PROVO, Respondent, *v.* CITY OF SYRACUSE, Appellant.

(Argued May 24, 1933; decided May 31, 1933.)

*Edward L. Robertson, Corporation Counsel,* for appellant.

*A. Lee Olmsted* for respondent.

POUND, Ch. J.  This is an action to recover $28,168 from the city of Syracuse claimed as a balance due on a contract for construction work.

The question is whether the complaint herein does more than state facts constituting a claim for extra compensation for work agreed to be done under a municipal contract, or whether it states facts constituting a cause of action for work done for which the contractor is entitled to compensation under the contract.

A written contract was entered into, after competitive bidding, between the plaintiff, the lowest bidder, and the city of Syracuse, dated December 28, 1926, whereby plaintiff agreed to dig a trench and lay a cast-iron pipe therein for the Syracuse water supply from Skaneateles lake according to plans and specifications therefor.

The contract, among other things, provided:

" *Depth.*

" Section 82. The trench for the main conduit shall be excavated to the depth, grades and alignments shown on the maps and profiles, or as the Commissioner may direct, which in general will be to such depth as to allow at least four (4) feet of cover over the top of the pipe.  In earth excavation the bottom of the trench will be graded and leveled off to a depth of two (2) inches below the invert of the pipe.  In rock, the bottom of the trench shall be excavated six (6) inches lower than the invert of the pipe, and the spaces refilled with earth upon which to bed the pipe.  Trench excavation will be paid for a depth of two (2) inches below invert grade for earth and for a depth of six (6) inches below invert grade for rock."

Section eighty-three of said contract provided as follows:

"*Width and slope of trench.*

" Section 83. The trenches for the 36 inch conduit, to have a width of four and one-half (4½) feet, at the

bottom of the pipe, with side slopes of one (1) horizontal to ten (10) vertical. *These are the maximum dimensions which will be paid for in the trench for the main conduit.*"

Section eighty-six of said contract provided as follows: "*Measurements and projections.*

"Section 86. Any material excavated or removed outside of the limits above specified in the trench for the main conduit, will not be included in the measurement, nor be paid for, unless the same is *specifically ordered* by the Commissioner, or made necessary by a change in the line. \* \* \*."

The contract also provided:
"*Alteration of the work.*

"20. The Contractor agrees that the Engineer *may make alterations* in the line or grade, and the Commissioner in place, form, position, dimension, or material, of the work herein contemplated, or any part thereof, either before or after the beginning of construction, and that, in case of any such alteration, so much of this contract as is not necessarily affected thereby shall remain in force. If such alterations decrease the quantity of work to be done they shall not constitute a claim for damages or for anticipated profits on the work that may be dispensed with; if they increase the quantity of work to be done, such increase will be paid for according to the quantity actually done, and at the price established for such work under this contract, or in case there is not price established therefor it will be paid for at its actual reasonable cost to the Contractor as determined by the Commissioner, plus fifteen per cent of such cost."

The complaint alleges:
"*Eleventh:* Plaintiff further alleges that shortly subsequent to the date when the plaintiff began to excavate the pipe trench and to lay pipes therein, plaintiff found that the size of the specified pipe trench, especially regarding the width of the bottom of the trench and the slope of the sides thereof, did not give sufficient room

for the proper and efficient laying of the pipes as required
by the terms of the contract; that in a trench of the size
specified by the contract, there was not room to properly
place, locate, align, tamp, refill the trench about the pipe,
test the same under pressure, determine the mount of
the joint room, caulk and joint the sections of pipe, or
to furnish proper room for the inspection of the work by
the defendant's Inspectors and agents, as required and
specified by the provisions of said contract, hereinbefore
referred to and set forth; that thereupon the plaintiff
brought the matter of the improper specified size and
dimensions of the pipe trench to the attention of the
Commissioner of Public Works, and his duly authorized
agents acting within the scope of their authority, and
after some investigation, the Commissioner of Public
Works, individually and acting through his said agents
and appointees within the scope of their authority,
changed the *dimensions of the pipe trench for the 36 inch
pipe,* so that the specifications should then provide that
the plaintiff should excavate and be paid for a trench
five (5) feet in width at the bottom and with side slopes
of two and one-half (2½) feet horizontal to seven (7)
feet vertical, and providing for the same degree of slope
of the trench at other depths; *that the contractor should
be paid for excavating pipe trench at the price per cubic
yard specified in the contract to the dimensions hereinbefore
stated, provided that the plaintiff did actually excavate to
those dimensions,* and that in case the plaintiff did not
excavate to the width and slope as hereinabove provided
that he should be paid only for the amount of material
actually excavated; that if the plaintiff excavated beyond
the said limits as to width and slope, so provided for,
that then he should not be paid for any material excavated
outside such width and slope; that the change in the said
contract was duly authorized by the provisions contained
therein, hereinbefore alleged and referred to, and par-
ticularly by Paragraphs three and twenty thereof and

Sections eighty-two and eighty-six of the specifications; that the Commissioner of Public Works of the defendant, individually and acting through his duly authorized agents, gave notice of the correction and amendment of the specifications as to the size of the trench, to the plaintiff herein, as required by the said contract; that the plaintiff duly accepted the orders and directions of the defendant's Commissioner of Public Works, and his authorized agents and employees, and thereafter proceeded to excavate the trench for the 36 inch pipe line to a width of five (5) feet at the bottom and with side slopes of two and one-half ($2\frac{1}{2}$) feet on seven (7) feet.

" *Twelfth:* Plaintiff further alleges that he excavated the said pipe trench for 36 inch pipe, of the additional width and additional side slope and to the dimensions as provided by the new order, direction and change made by the Commissioner of Public Works, relying upon the promise and agreement of the Commissioner of Public Works that he would be paid therefor, as hereinbefore provided; that at all times subsequent to the issuing of the said change order as to the size, shape and dimensions of the pipe trench for the 36 inch pipe, the City Engineer of the City of Syracuse made surveys and plotted cross-sections of the trench so excavated by the plaintiff and included in the partial monthly estimates the amount of material excavated for the 36 inch pipe trench, in accordance with the direction of the Commissioner of Public Works and his authorized agents and that the defendant paid to the plaintiff, in partial estimates numbered three to ten, inclusive, sums of money as provided for in said contract for such extra and additional excavation as was made necessary by the change in the width and dimensions of the pipe trench, and that estimate number ten, issued by the defendant, through its City Engineer and Commissioner of Public Works, allowed the plaintiff for 65,108 cubic yards of trench excavation; that during the execution of the contract the plaintiff

actually excavated 69,836 cubic yards of trench excavation and duly refilled and backfilled the same as provided by the said contract as changed, ordered and altered by the orders of the Commissioner of Public Works and his authorized agents, and that in the doing of such work, plaintiff at all times relied upon the promise and agreement of the Commissioner of Public Works and his authorized employees, that the plaintiff would be duly paid therefor, at the contract price of $1.40 per cubic yard; that in estimate number eleven the number of cubic yards of trench excavation was reduced to 62,325 cubic yards, although during the period between the issuing of the tenth partial estimate and the eleventh partial estimate, additional trench excavation had been made by the plaintiff, and that in each of the following monthly estimates the quantity allowed to the plaintiff for trench excavation and backfill was reduced, although the work of excavating and refilling such trench had been continued by the plaintiff; that estimate number twelve allowed plaintiff for excavating pipe trench, a total of 57,325 cubic yards; that estimate number thirteen allowed plaintiff for excavating 56,000 cubic yards; that estimate number fourteen allowed plaintiff for excavating 55,000 cubic yards; that estimate number fifteen allowed the plaintiff for excavating 52,251 cubic yards; that estimate number sixteen allowed plaintiff for excavating 52,251 cubic yards; that estimate number seventeen allowed the plaintiff for excavating 52,249 cubic yards, and that the final estimate of the Commissioner of Public Works and City Engineer allowed plaintiff for trench excavation and backfill at 49,716 cubic yards.

" *Thirteenth:* Plaintiff alleges, upon information and belief, that the total of 49,716 cubic yards trench excavation and backfill as allowed to the plaintiff in the said final estimate was based upon the excavation and refill of a pipe trench of the dimensions, width and shape as originally specified in the contract, and that such quan-

tity did not include any excavation outside of a width of four and óne-half ($4\frac{1}{2}$) feet at the bottom of the trench with side slopes of one (1) horizontal on ten (10) vertical and that the plaintiff was not allowed for any material excavated or removed outside of the limits of a pipe trench of such size.

*"Fourteenth:* That the total quantity of material excavated by the plaintiff for pipe trenches was 20,120 cubic yards of material in addition to that allowed to the plaintiff in the said final estimate."

The agreement of the Commissioner that the contractor should be paid for additional excavation was not binding on the city unless the Commissioner *specifically ordered* the additional excavation because of an alteration " in place, form, position, dimension, or material, of the work " contemplated by the contract. The contract definitely specified " the maximum dimensions which will be paid for in the trench." Contractor agreed to dig the trench for the main conduit but agreed that the maximum dimensions which would be paid for were those specified in section 83, *supra.*

The action is not for extra work but for work done under the contract, and it, therefore, follows that to allow the contractor for excavation for more than the maximum dimensions specified in the contract would be to allow him extra compensation for doing the work which he had contracted to do for the agreed compensation, contrary to the rule recently laid down in *Weston* v. *State of New York* (262 N. Y. 46) unless the Commissioner " specifically ordered " the contractor to make the larger excavation.

The complaint fails to allege facts stating that the Commissioner *specifically ordered* the contractor to make the larger excavation or so altered the dimensions of the trench as to require the contractor to excavate the larger trench. It alleges that the Commissioner agreed that the contractor be paid for such additional excavation as he

actually made. Under a fair construction of the complaint, aside from the conclusions therein stated, it means merely that the Commissioner acquiesced in the larger amount of excavation which the contractor had already agreed to do for the contract price as definitely as if he had agreed to make all the necessary excavation for a fixed sum. He had agreed to make the excavation for a unit price per cubic yard covering a limited area, no matter how much excavation the work actually required, and he is to be held to his bargain unless the Commissioner specifically compelled him to do more.

As a fair reading of the complaint does not disclose any alteration of the dimensions of the trench which required the contractor to do any excavation in addition to the excavation he agreed to do, it fails to state a cause of action. (*Voorhis* v. *Mayor*, 62 N. Y. 498, 501; *O'Brien* v. *Mayor*, 139 N. Y. 543, 570, 571.)

Even if the Commissioner had the power to enlarge the prescribed lines to be excavated so as to hold the city liable to pay an additional amount because of the enlargement (*Kerbaugh, Inc.*, v. *City of New York*, 228 N. Y. 576; *Odell* v. *City of New York*, 238 N. Y. 623), the complaint does not allege that he so exercised the power as to compel performance by the contractor.

The order of the Appellate Division should be reversed and that of Special Term affirmed, with costs in this court and in the Appellate Division, with leave to plaintiff to serve an amended complaint within thirty days. Question certified answered in the negative.

Concur: CRANE, LEHMAN, KELLOGG, O'BRIEN and CROUCH, JJ. Not sitting: HUBBS, J.

Ordered accordingly.