Savin Brothers, Inc., Respondent, v State of New York, Appellant. (Claim No. 55011.)

Fourth Department, May 19, 1978

512

**APPEARANCES OF COUNSEL**

*Louis J. Lefkowitz, Attorney-General (George Thorpe* and *Ruth Kessler Toch* of counsel), for appellant.

*Jarvis, Pilz, Buckley & Treacy (Carl Buckley* of counsel), for respondent.

## OPINION OF THE COURT

MARSH, P. J.

The State of New York appeals from a judgment of the Court of Claims which ordered that claimant-respondent Savin Brothers, Inc., recover the sum of $872,519.70 with interest of $255,357.43, amounting in all to $1,127,877.13, in full settlement of its claim.

On May 3, 1968 claimant-respondent Savin Bros., Inc. (claimant) and appellant State of New York (State) entered into a contract for the construction of Baldwinsville State Fair, State Highway No. 8496, plus 6.41 miles of access, and the connection with the Baldwinsville Bypass, State Highway No. 67-5, in the County of Onondaga. The project was accepted as completed on August 9, 1971. On May 15, 1972 claimant filed a claim against the State for damages due to an alleged breach of contract. The claim as finally submitted to the court alleged as a first cause of action that the State represented and warranted that materials recovered from the excavations would be suitable for use in the embankments; that such materials were unsuitable, as were the materials at the lines and grades shown on the contract plans in the excavation areas; that the State arbitrarily and erroneously refused to permit the claimant to waste the unsuitable materials, or to undercut in the excavation areas, or to borrow suitable embankment and backfill materials; that claimant, under protest, proceeded to use the unsuitable materials and manipulated and compacted each layer of the embankment in accordance with the contract specifications, which had been incorporated as part of the contract; that after the excavation areas were cut to the required lines and grades the subgrade was proof rolled as required by the specifications and in numerous areas, in both the excavation and the embankment, it failed the proof rolling test; that the State ordered claimant to undercut the unsuitable material at subgrade in excavation areas and to replace it with select borrow; that the State refused claimant permission to re-excavate the top two feet of embankment and replace the unsuitable material with select borrow but the claimant proceeded to do so, under protest of the State's refusal, in order to remedy the situation and progress the project to a timely completion; and that therefore the State

should be liable for the extra and additional work performed. In the alternative, claimant alleged causes of action second through seventh as follows:

Second: That the State arbitrarily and erroneously refused to permit claimant to waste the unsuitable material; that the claimant placed the unsuitable material in the embankments under protest; that the claimant thereafter manipulated and compacted each layer of embankment as required and approved by the State; that the embankments failed the proof rolling test; that after receiving no direction from the State the claimant proceeded to re-excavate a portion of the embankment and replace it with borrow; and that the State is liable for the increased cost and expense of the re-excavation.

Fourth: That upon excavation to the lines and grade set forth in the contract plans the claimant was refused permission to undercut the unsuitable materials and was ordered to complete and grade the subgrade which it did under protest; that after failure of the subgrade under the proof rolling test the claimant was ordered to undercut and backfill portions of the excavated areas with borrow; that as a result the claimant was forced to perform the undercutting in a piecemeal, non-continuous and nonsequential operation; and that the State is liable for the increased costs above the unit prices for excavation which the claimant incurred.

Fifth: That the State is liable for quantities of borrow used to backfill after re-excavation of the embankments.

Sixth and Seventh: That the State is liable for losses sustained as a result of undercutting ordered by the State to be performed in a piecemeal and nonsequential operation with respect to subbase items 3 and 4.

The parties stipulated at trial as to the amount of damages and left open only the issue of liability. The third cause of action was withdrawn. The Court of Claims dismissed the first cause of action and after considering separately each of the remaining causes of action and setting forth the factual bases for the conclusions reached, found liability on the part of the State in the amounts to which the parties stipulated. The State appeals on the grounds that all of the work done by the claimant was within the terms and conditions of the contract, for which the State has paid the agreed upon contract price. In support of its appeal the State argues (1) that the contract explicitly states that the contractor was to absorb the costs of correcting for high moisture content as part of its obligation

to compact the layers in the embankment, and that there was no misrepresentation by the State as to the condition of the soil to be excavated and placed in the embankments, (2) that there was no substantial evidence in the record from which the court below could have reasonably concluded that the material in the cuts was unsuitable for use in the embankments or that the compaction and proof rolling requirements were incompatible as the evidence clearly shows that the failure of the proof rolling test was due to claimant's failure to properly dry out the soil and provide adequate drainage, and (3) that the parties agreed as part of their contract that determinations as to the need to correct deficiencies discovered by proof rolling as to suitable moisture content and method of correction, and as to the classification of unsuitable materials were to be left to the discretion of the engineer and should not be disturbed. In response claimant argues: (1) that the evidence shows that the proof rolling failed due to the unsuitability of the materials and the incompatibility of the compaction and proof rolling specifications, either of which was responsible for the increased costs, (2) that the question of the wetness or dryness of the soil is irrelevant as the claimant manipulated the soil as required and is not seeking to recover costs for that work, that the extra work for which recovery is sought was not within the contract but was due to the actions of the State in the arbitrary and capricious determinations of its engineer and in defects and contradictions in the plans and specifications themselves and (3) that the factual findings of the trial court are to be given great weight, particularly here where the demeanor of the witnesses appears to have been taken into account in evaluating their testimony.

■ The ultimate guide in determining whether or not the contractor is to be paid for extra work is the contract itself *(Kuhs v Flower City Tissue Mills, Co.,* 104 Misc 243, mod other grounds 189 App Div 539, affd 190 App Div 928, affd 231 NY 637; 10 NY Jur, Contracts, § 282). It is a question of intent of the parties. Where the contract contains positive representations as to conditions, substantially amounting to a warranty, recovery may be had, but if the parties intended the contractor to rely upon its own investigation, no recovery for extra work may be had, absent a showing of fraud or misrepresentation as to existing conditions *(Niewenhouse Co. v State of New York,* 248 App Div 658, affd 272 NY 484; *Weston v State of New York,* 262 NY 46, 51; *Kuhs v Flower City Tissue*

*Mills, Co., supra; T. J. W. Corp. v Board of Higher Educ.,* 251 App Div 405, affd 276 NY 644; 10 NY Jur, Contracts, § 282). Extra work has been defined as something necessarily required in the performance of the contract which arises from conditions which could not be anticipated (10 NY Jur, Contracts, § 282). Where one agrees to do, for a stated sum, a thing possible to be performed, he is not entitled to additional compensation merely because he encounters unforeseen difficulties (10 NY Jur, Contracts, § 284). Thus, the general rule is that where the contract is for construction of an entire work at a stipulated price the contractor cannot recover for additional work or expense caused by unforeseen difficulties or casualties *(id.).* Recovery cannot be had for extra work which actually falls within the contract or the plans and specifications (10 NY Jur, Contracts, § 282), but recovery may be had for work outside the contract where the contractor was in fact specifically ordered to do work not within the scope of that called for by the contract *(Provo v City of Syracuse,* 262 NY 127; *Kuhs v Flower City Tissue Mills Co., supra).* It is established that the contractor cannot recover for additional work required by the architect or engineer in charge of construction where the contract gives the architect or engineer authority to determine the manner of performing the contract *(Snare & Triest Co. v City of New York,* 191 App Div 184, 199, affd 233 NY 528; 10 NY Jur, Contracts, § 283). In general, the parties are free to leave certain determinations to the judgment of the engineer and, where this has been done, the determination of the engineer is final as a matter of law, absent a showing of fraud or bad faith *(Wood & Co. v Alvord & Swift,* 232 App Div 603, affd 258 NY 611; *Daniels Co. v City of New York,* 196 App Div 856). However, if there appears no reasonable basis for the engineer's action, if it is patently erroneous, then the courts have found the equivalent of bad faith and the contractor is not bound by the engineer's decision *(Smith Contr. Co. v City of New York,* 240 NY 491). Similarly, the contractor is not bound by the engineer's erroneous construction of law in interpreting the contract *(Smith Contr. Co. v City of New York, supra; Daniels Co. v City of New York, supra; Burke v Mayor, etc. of City of N. Y.,* 7 App Div 128). In every express contract for the performance of construction work there exists an implied term that the owner or the party for whom the work is to be performed will not obstruct but, on the contrary, will facilitate performance.

When a contractor is so obstructed by the directions of an architect or engineer acting as agent for the owner, that extra materials or labor are required, there is a breach of contract on the part of the owner and damages are measured by the value of the additional work and materials furnished *(Ryder Bldg. Co. v City of Albany,* 187 App Div 868; 10 NY Jur, Contracts, § 283; see, also, *Weston v State of New York,* 262 NY 46, 51, *supra; Kuhs v Flower City Tissue Mills Co.,* 104 Misc 243, 246, *supra).* Obstruction on the part of the owner may consist of a defective set of plans *(Ryder Bldg. Co. v City of Albany, supra,* p 872). It has been said that the fault of the plans should not prevent the contractor from recovering payment for good work done and good materials furnished as required by plans and specifications which the contractor had no right to vary *(MacKnight Flintic Stone Co. v Mayor, etc., of City of N. Y.,* 160 NY 72).

■ The contract section "i. Subgrade Area" clearly states that in the event of a proof rolling failure, no direct payment will be made for any work required to correct deficiencies in the embankment construction item. In contrast, work required to correct subgrade deficiencies in the cut areas is to be paid for by the State. The rationale for the distinction as given in the testimony is that it is unfair to hold the contractor responsible for unsuitable conditions which are found in the subgrade when an excavation has been performed to the lines and grades specified in the plans, but there is no unfairness in requiring the contractor to correct subgrade deficiencies where the contractor has itself built the embankment. The specifications further provide that there shall be no direct payment for any delays caused by the need for corrective work, the cost of delays to be included in the price bid for the embankment construction item. The record is clear that the claimant was paid for the undercut it was required by the State to do in order to correct subgrade deficiencies in the excavated area, but that it was not paid for the cost of re-excavating the top two feet of embankment to correct deficiencies in the embankment revealed by the proof rolling test. The record also shows that the claimant's cause of action based upon necessity for a "piecemeal" type of operation due to the refusal of the State's engineer to permit the undercut to be performed at the time the claimant first requested it, is in reality a complaint based upon certain time delays which allegedly occurred. It is apparent that the claimant did not calculate in concrete terms the

difference between what it would have cost to perform in a continuous manner and what it did in fact cost to perform in a "piecemeal" fashion. Claimant failed to causally relate any increased costs to delay which occurred when it corrected deficiencies in the excavated areas which failed the proof rolling test.

There is no reason to release the parties here from their obligations under the contract. Although the claimant alleges that the State misrepresented soil conditions there is no evidence of fraudulent misrepresentations. The contract provides: "Article 3. Examination of Documents and Site. The Contractor agrees that before making his proposal he carefully examined the contract documents, together with the site of the proposed work, as well as its surrounding territory, and is fully informed regarding all of the conditions affecting the work to be done and labor and materials to be furnished for the completion of this contract * * * and that his information was secured by personal investigation and research and not from the estimates or records of the Department, and that he will make no claim against the State by reason of estimates, tests or representations of any officer or agent of the State." Thus the claimant could and presumably did rely only on its own investigations of soil conditions before entering the contract. The specifications clearly state that the engineer shall be the sole judge of what constitutes unsuitable material, and the law is clear that where the parties have so agreed, the determination of the engineer is final as a matter of law absent a showing of fraud or bad faith. There are no allegations that the engineer acted fraudulently. Furthermore, there is no evidence in the record from which it can be concluded that there was no reasonable basis for the engineer's determination, or that it was patently erroneous. All of the experts, including the expert for claimant, agreed that the excavated material *could* have been used in the embankments if properly treated, although they disagreed as to this treatment. Various alternatives were suggested to claimant to correct the wet conditions. The specifications state that the contractor is to be responsible for the moisture content of the soils to be compacted, using any method approved by the engineer, for the compactive effort itself, and for maintaining ditches to insure satisfactory drainage at all times. Claimant should not be permitted to go outside the contract on the ground that the specifications are contradictory within themselves, and there-

fore defective. The expert for the claimant did give his professional opinion that the compaction and proof rolling requirements were incompatible in that the compaction specification did not require uniformity of compaction but the proof rolling specifications did require uniformity of compaction and it was established that each layer of embankment was approved by the State's engineer before the next layer of soil was placed. The words of the specifications are, however, that the contractor "shall provide an embankment uniformly compacted to the required densities, herein specified". Under "i. Subgrade Areas" the specifications state "The intent and purpose of the proof rolling procedure specified herein is to ascertain the uniformity of the subgrade compaction and to locate deficiencies that, in the judgment of the engineer, require correction." The specifications are neither inconsistent nor defective by requiring tests for each lift as it is placed and compacted and a final test for the entire area. There was uncontradicted testimony that the tests are different in nature, the compactions tests being of isloated areas and the final proof rolling test being of the entire embankment. It was also uncontradicted that the State's specifications were used successfully on a project located about two miles from the subject project. Apart from testimony that excessive moisture caused the proof rolling failures, there was testimony that the failure of the subgrade under the proof roller could have been due solely to the passage of construction equipment over the embankment, and if this were the case, the specifications provide that no extra payment is to be made for repairs and recompaction made necessary by the contractor's equipment on the work site.

Giving full consideration to the contract and specifications which contain the agreement between the State and claimant, the judgment should be reversed and the claim dismissed.

MOULE, CARDAMONE, HANCOCK, JR., and WITMER, JJ., concur.

Judgment unanimously reversed, on the law and facts, without costs, and claim dismissed.