■ STEPHEN HERMAN, Appellant-Respondent, v SEYMOUR MALAMED, Respondent-Appellant.

Plaintiff is a consultant involved in, among other enterprises, financing and selling limited partnership interests, as tax shelters, in motion picture productions. Defendant is also in the business of providing investment advice regarding tax shelters and other ventures. Following the parties' meeting in 1978, plaintiff was hired as a consultant on the production and promotion of two movies, “Midnight Express” and “California Suite”, in connection with which two separate partnerships were formed, Express Associates and Suite Associates, respectively named for each film. As outlined in a letter dated October 5, 1978 (modified on October 20, 1978), plaintiff was to receive a base sum plus 7.5% of the “net receipts paid to Seymour H. Malamed as the General Partner's share of receipts of Express Associates”. Plaintiff subsequently received $32,500 compensation for consulting services which he had rendered to Express Associates.

On December 26, 1978, plaintiff and defendant agreed in writing that plaintiff would be paid $19,000 in full payment of

his services to Suite Associates and in consideration thereof, he would "release you and Suite Associates from any and all claims, present and future, known and unknown." Plaintiff thereafter received two checks from Suite Associates totaling $19,000. On January 23, 1980, plaintiff executed a release in favor of defendant for all claims except for defendant's obligations under the letter agreement dated October 5, 1978, as amended on October 20, 1978, with respect to the following matters: (1) the payment of $2,687.50 upon defendant's receipt of $44,125 from Express Associates, and (2) payment of an amount equal to 7.5% of the amount received by defendant in excess of the sum of $44,125 for his share of the cash flow earned from the exploitation of the movie "Midnight Express". However, other than a payment of $8,500 to plaintiff made contemporaneously with this release, no further moneys have been forthcoming, plaintiff asserts, nor has any accounting been rendered. Consequently, the instant action was commenced in December of 1982 seeking an accounting and damages for breach of contract.

Defendant's answer alleged that the complaint failed to state a cause of action and that plaintiff had released defendant of any and all liability. Defendant further contended that plaintiff had violated the agreement between them by divulging various trade secrets to third parties and failing to preserve the confidences and trade secrets entrusted to him in the course of his employment. He also accused plaintiff of having entered unlawfully into defendant's offices during the night of November 7, 1979 in order to remove client lists and other files and to utilize the confidential information contained therein for his own personal advantage. Therefore, plaintiff was purportedly guilty of gross dishonesty for which defendant was entitled to damages. Defendant then moved for summary judgment based upon his defense of release. Plaintiff cross-moved for summary judgment, arguing that the December 1978 release clearly applied only to the services performed by plaintiff on behalf of Suite Associates. He pointed out that if the 1978 release had been intended to cover all of the parties' dealings, then the ensuing limited release of 1980 would have been unnecessary. Special Term, however, denied both defendant's motion and plaintiff's cross motion.

It is well settled that a "release may contain specific recitals as to the claims being released, and yet conclude with an omnibus clause to the effect that the releasor releases and discharges all claims and demands whatsoever which he or his heirs, executors, administrators, or assigns have or may have

against the releasee. In such situations, the courts have often applied the rule of ejusdem generis, and held that the general words of a release are limited by the recital of a particular claim" (19 NY Jur 2d, Compromise, Accord, and Release, § 83). Thus, if from the language of the instrument, it appears that the release is to be limited to certain claims, demands or obligations, then the release will be operative as to those matters only. (*Lanni v Smith*, 89 AD2d 782.) In that regard, it is the responsibility of the court to interpret written instruments. (*Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.*, 32 NY2d 285.) As the court therein stated (p 291), "where a question of intention is determinable by written agreements, the question is one of law, appropriately decided by an appellate court * * * or on a motion for summary judgment. Only where the intent must be determined by disputed evidence or inferences outside the written words of the instrument is a question of fact presented".

An examination of the 1978 release indicates that it was intended to extend only to those claims arising out of the Suite Associates venture. Indeed, had this instrument been meant to constitute a general release, as defendant urges, the execution of the 1980 limited release would make no sense whatever, and defendant would have been consenting to remit payments to plaintiff in connection with claims or obligations for which he had already been released. The fact is that the 1978 document pertains to the Suite Associates partnership only. It is the 1980 limited release, upon which the present action is based, which covers the "Midnight Express" venture, and defendant does not maintain that plaintiff has been fully compensated for his services to Express Associates or that there has been an accounting under the agreement involved herein. Consequently, Special Term should have granted plaintiff's cross motion for summary judgment.

As for defendant's counterclaims, the law is clear that in order to defeat a motion for summary judgment, a party "must produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact on which he rests his claim or must demonstrate acceptable excuse for his failure to meet the requirement of tender in admissible form; mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient". (*Zuckerman v City of New York*, 49 NY2d 557, 562; *see also, Alvord & Swift v Muller Constr. Co.*, 46 NY2d 276; *Fried v Bower & Gardner*, 46 NY2d 765; *Platzman v American Totalisator Co.*, 45 NY2d 910.) In the situation before us, defendant's sweeping allegations that he was damaged in some unspecified amount by plaintiff's burglary of his offices and the

latter's wrongful disclosure to unnamed third parties of various unidentified confidences and trade secrets is simply inadequate to establish any viable counterclaims such as would preclude a grant of summary judgment. There is no proof whatever of an agreement between the parties that plaintiff would refrain from disclosing confidential information and competing in a similar business, nor is there any evidence of the existence of customer lists or other trade secrets whose disclosure constituted a breach of contract. Concur — Sandler, J. P., Carro, Milonas and Kassal, JJ.