IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 92-2649

---

GALIN CORPORATION and PETROPAK, INC.,

Plaintiffs-Appellants,

versus

MCI TELECOMMUNICATIONS CORPORATION,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Southern District of Texas

---

( January 14, 1994 )

Before WISDOM, HIGGINBOTHAM, and SMITH, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

This is a diversity suit for breach of a construction contract. The district court granted judgment denying relief to plaintiffs at the outset of trial, but without allowing the parties to present evidence to the jury. We agree with the district court that plaintiffs' claims are barred by the terms of the release and notice of claim provisions of the construction contract. We also conclude that the district court's unusual grant of judgment at the outset of trial was effectively a grant of summary judgment that had been argued earlier. We affirm.

In March 1987, MCI Telecommunications Corporation invited bids on a fiber optic cable installation route comprising eight sections to extend through Georgia, Alabama and Tennessee. Galin Corporation and Petropak, Inc., met with MCI personnel, made extensive visits to various future work sites, and analyzed MCI's plans, specifications, and bid instructions. Galin and Petropak then submitted bids on six of the eight sections. MCI accepted no bids on the project. In late August of the same year, MCI issued new instructions for the installation of a shorter version of the same fiber optic cable route. Before requesting a second set of bids, MCI released to the prospective contractors an estimate of the amount of subsurface rock that lay along the cable route. Galin and Petropak again submitted a bid, this time at a lower price, which MCI accepted. The parties executed a written contract.

Galin and Petropak commenced work in early November. During the project, MCI complained to Galin and Petropak of their lack of timely progress and, on December 18, MCI gave Galin and Petropak notice of termination by default for failure to meet the contract schedule. On December 30, MCI eliminated the last seven miles of the cable route from the contract.

Galin and Petropak say that they completed the installation of the cable on or about February 21, 1988, "except for areas where MCI had failed to obtain necessary permits or easements and where

MCI had misrepresented the existence of rocks"; and that they then commenced cleaning up their work sites.

On April 22, 1988, MCI issued a proposed Final Modification of Contract, which Galin and Petropak did not sign. As the project had progressed, however, Galin and Petropak had signed a series of releases in exchange for incremental payments from MCI. They signed the last of these releases on May 13, 1988. Finally, in July of 1988, MCI terminated the contract for non-performance.

Settlement negotiations failed and Galin and Petropak filed this suit in a Texas court seeking compensation from MCI for breach of contract, in quantum meruit, and in tort. MCI removed to federal district court invoking the court's diversity jurisdiction. MCI and Galin and Petropak then both moved for summary judgment. The district court granted judgment to MCI on Galin and Petropak's claim for breach of a covenant of good faith and fair dealing, but left the remaining issues for trial.

When the case was called for trial, MCI asserted that the district court should render judgment. The district court granted the requested relief treating it as a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). Applying New York law, the court dismissed the case before the first witness was called. Galin and Petropak appeal.

Galin and Petropak pursue several claims.

Galin and Petropak allege that MCI deliberately underestimated the amount of subsurface rock that lay along the route to decrease the cost of construction. The subcontractor who performed the rock probes, Galin and Petropak assert, did not work long enough to produce the results that MCI released. Galin and Petropak argue that MCI must have fabricated either some or all of the site information. They claim to have relied on this falsely optimistic information in their bid.

According to Galin and Petropak, MCI engaged in other questionable business practices. They allege that MCI's designs for installing the cable were faulty, that MCI failed to obtain timely permission for them work on several stretches of the route, that MCI interfered in their operations, that MCI forced them to meet more exacting standards during the clean up process than the contract required, and that MCI otherwise failed to support them.

Galin and Petropak sue for recovery on the contract, in quantum meruit for extra-contractual work performed, for compensation for MCI's wrongful interference with their contract performance, and for compensation for MCI's breach of its duty of good faith and fair dealing.[1] The district court decided the case

---

[1] Galin and Petropak wish to recover the balance owed on their contract with MCI, compensation for the work they performed outside the scope of their contract with MCI, and damages which they incurred as a result of delays, acts of interference, improper administration of the contract, misrepresentations, and other reckless, grossly negligent, arbitrary and capricious acts by MCI.

based on provisions in the contract that protect MCI from liability and on the releases that Galin and Petropak signed. Galin and Petropak argue that the protective provisions and releases are inapplicable to their claims and, further, that MCI waived application of the provisions. The parties agree that New York law controls.

A.

At the outset, Galin and Petropak argue that the district court improperly invoked Federal Rule of Civil Procedure 50(a) in dismissing their case. First, they argue that Rule 50(a) required that MCI move for judgment as a matter of law and that when the court ruled MCI had not done so. Second, they argue that they had not been fully heard by the court, as required by Rule 50(a), before it rendered judgment. We need not address these contentions as we construe the court's order as a grant of summary judgment and affirm on that basis.

The district court early in the case denied MCI's motion for summary judgment, to which Galin and Petropak had fully responded. On reconsidering, the court concluded that the case did turn on the notice and release provisions of the contract. This interpretation presented no issues of fact and protected MCI from liability. The court therefore ruled in MCI's favor, albeit under Federal Rule of Civil Procedure 50(a).

Where a case does not require the resolution of material facts, summary judgment is appropriate. See Seneca v. Phillips Petroleum Co., 963 F.2d 762, 765 (5th Cir. 1992). We have in the

5

past affirmed summary judgment on grounds different than those adopted by the trial court.  Id. at 765; Church of Scientology v. Cazares, 638 F.2d 1272, 1281 (5th Cir. 1981).  Since both parties had adequate opportunity to address the issues involved in summary judgment prior to the district court's ruling, we see no impediment to treating the judgment below as a grant of summary judgment. Having so concluded, we consider the propriety of that judgment.

### B.  The Releases

Galin and Petropak signed several partial releases in exchange for incremental payments from MCI, the last on May 13, 1988, after installation of the cable route.  They performed no work after execution of this release other than cleaning the work sites.

The releases read in pertinent part:

Partial Release and Indemnity

In consideration of payments made heretofore, or to be made based upon this invoice for labor, material, equipment, subcontract work, and any and all costs incurred for the performance of the contract work invoiced thus far, the Contractor hereby unconditionally and without reservation releases and indemnifies MCI and their officers, agents, employees, assignees and heirs from any and all liens, claims, demands, penalties, losses, costs, damages and liability in any matter whatsoever.

Galin and Petropak interpret the releases narrowly in two ways:  first, as applying only to the work specified in the invoices they submitted; and, second, as applying only to the contract work, as opposed to the extra work, which they performed. The language of the releases precludes this interpretation.

Under New York law, where the language of a release admits of only one interpretation, the proper interpretation of the release

6

is a question of law.  <u>Janos v. Peck</u>, 251 N.Y.S.2d 254, 258 (N.Y. App. Div.), <u>aff'd</u>, 254 N.Y.S.2d 15 (N.Y. 1964) ("Where... there is a question as to the construction of a written contract  between the parties and the determination of that question may be reached by reference to and a consideration of the plain and unambiguous wording of the contract, the question, as one of law, should be then and there resolved.")  See also <u>Metz v. Metz</u>, 572 N.Y.S.2d 813, 815 (N.Y. App. Div. 1991).  The releases that Galin and Petropak signed list <u>as consideration</u> all compensation that MCI paid Galin and Petropak in the past as well as the compensation the invoice required MCI to pay Galin and Petropak in the future.  The <u>terms of the release</u>, however, are broader.  The form releases MCI from "all liens, claims, demands, penalties, losses, costs, damages and liability in any matter whatsoever."  As Galin and Petropak signed nine releases in exchange for incremental payments, the court interpreted the language of each release to reach all claims of Galin and Petropak against MCI that existed at the time Galin and Petropak signed each one.  This interpretation is appropriate as, under New York law, a general release "will bar suit on any cause of action arising prior to the date of its execution and delivery, in the absence of fraud or other vitiating circumstances in its inducement or execution."  <u>Metz</u>, 572 N.Y.S.2d at 815 (citation and internal quotation marks omitted).  See also <u>Troy News Co. v. Troy</u>, 563 N.Y.S.2d 301, 303 (N.Y. App. Div. 1990) (holding a release that so specifies applies to future claims but in the absence of specification applies to all claims in existence

when it is given). But see Herman v. Malamed, 487 N.Y.S.2d 791, 793-94 (N.Y. App. Div. 1985) (holding that a specific release followed by an omnibus clause may be limited to the specified terms). Galin and Petropak do not claim that MCI fraudulently induced them to sign the releases. With the exception of their claim for cleaning the work sites, neither do Galin and Petropak deny that the claims which they now pursue existed when they signed the various partial releases. Thus, they offer no basis for refusing enforcement of the releases.

Galin and Petropak fail in their attempt to "marshal" case law for the proposition that we may modify or void these releases. In De Costa v. Williams, 462 N.Y.S.2d 799 (Sup. Ct. 1983), a New York court looked to the actual understandings of the parties in limiting the scope of a release. In doing so, however, the court noted, "A mistaken belief as to the nonexistence of presently existing injury is a prerequisite to avoidance of a release." Id. at 802 (citation omitted). Galin and Petropak do not claim that they were unaware at the time they signed the releases of the claims they now pursue. They insist instead that they were aware of them but had a different intent. They argue that they would have offered evidence to this effect at trial.

Where a written agreement is unambiguous, as in the present case, New York law does not allow consideration of extrinsic evidence of the parties' intentions. "It has long been the rule that when a contract is clear in and of itself, circumstances extrinsic to the document may not be considered and that where the

8

intention of the parties may be gathered from the four corners of the instrument, interpretation of the contract is a question of law and no trial is necessary to determine the legal effect of the contract." Janos, 251 N.Y.S.2d at 259 (citations and internal quotation marks omitted). See also Rice v. Cohen, 555 N.Y.S.2d 800, 801 (N.Y. App. Div. 1990) (holding that clear and unambiguous language in a document precludes consideration of extrinsic evidence to interpret its meaning). The releases are unambiguous. They bar Galin and Petropak's claims except those arising from cleaning the work sites. The cleaning, as we explained, occurred after May 13, 1988, so the last release did not reach claims from that work. Nevertheless, a provision in the construction contract precludes them.

### C. The Notice of Claims Provision

Paragraph 18 of the construction contract set a time frame for claims arising from unexpected circumstances. The paragraph required Galin and Petropak to notify MCI within five days of an event that could give rise to a claim on their part or that might extend the period of time in which they would complete the contract. It then provided that Galin and Petropak should submit to MCI within fourteen days a statement substantiating the change in circumstances and estimating its impact. Upon request, Galin and Petropak would have to document any claims submitted for extra compensation or for an extension of time.

Galin and Petropak do not deny that they failed to meet the terms of this provision in submitting their claims to MCI. They

9

argue instead that the provision applies to events that occurred during the completion of the contract, not to work that Galin and Petropak undertook on MCI's behalf that was unanticipated and, therefore, beyond the scope of the contract. They describe the latter as "extra" work.

The seminal case in New York defining "extra" work is Savin Brothers, Inc. v. State, 405 N.Y.S.2d 516 (N.Y. App. Div. 1978), aff'd, 393 N.E.2d 1041 (N.Y. 1979). In Savin Brothers, the court held that a contractor who allegedly performed extra work could not recover for that work. Id. at 521. In reaching that conclusion, the court defined extra work as "something necessarily required in the performance of the contract which arises from conditions which could not be anticipated." Id. at 519 (citation omitted). The contract determines which party assumes the costs of extra work. Id.

Galin and Petropak note that paragraph 15 of the contract addresses changes in the arrangement made at MCI's behest. These changes would not seem to encompass extra work. Paragraph 18, however, sets the time frame for reporting "the happening of any event" which Galin and Petropak believed might give rise to a claim "for an increase in contract price" or "the period of performance." Paragraph 18 addresses precisely the sort of unanticipated event that results in extra work and requires that Galin and Petropak report such events in a timely fashion.

Galin and Petropak submitted none of their claims within the period of time prescribed by paragraph 18. They submitted their

10

first claim for recovery in excess of the contract on May 16, 1988. They had ceased performing any work on the installation of the capable in February of 1988, three months earlier. Similarly, they did not submit their claim for cleaning the construction sites until August 8, 1988. They had completed cleaning the sites on May 1, 1988. Galin and Petropak did not comply with the provision in paragraph 18 requiring written notice of the event within five days and an estimate of its impact within fourteen days. Without such notice MCI could not respond to Galin and Petropak's concerns in a timely manner. Because Galin and Petropak delayed in making their claims, paragraph 18 precludes them from recovering for any extra work they performed.

### D. Waiver

Galin and Petropak argue, in the alternative, that MCI waived its various defenses. They base this argument on MCI's willingness to consider their claims.

"Waiver is an intentional relinquishment of a known right and should not be lightly presumed." Gilbert Frank Corp. v. Federal Ins. Co., 520 N.E.2d 512, 514 (N.Y. 1988) (citations omitted). A decision by MCI not to enforce its rights immediately, and instead to pursue completion of a contract, does not amount to such waiver. See Seven-Up Bottling Co. v. Pepsico, Inc., 686 F. Supp. 1015, 1023 (S.D.N.Y. 1988).

The New York Court of Appeals' treatment of waiver in a summary judgment context in Gilbert is instructive. 520 N.E.2d at 513-14. First, of course, a defendant must produce evidence which,

11

if uncontroverted, would establish a defense. The unambiguous language of the releases and the notice of claims provision satisfies this requirement. See id. at 514 (finding that a contractual limitation on the period of time in which a claim may be asserted carries defendant's burden in moving for summary judgment). Second, the plaintiff must have the opportunity to offer evidence of waiver of defense. Id. Applying this standard, the lower appellate court in Gilbert had held "that since defendant had not offered satisfactory explanations regarding the necessity for the intensive activity which was undertaken with regard to plaintiff's claim after the expiration of the limitations period, there were questions of fact . . . requiring further development." 514 N.Y.S.2d 215, 218 (N.Y. App. Div. 1987). Unwilling to draw an inference from the defendant's conciliatory posture, the Court of Appeals reversed. 520 N.E.2d at 514. The Court of Appeals explained that a plaintiff must offer "evidence from which a clear manifestation of intent by defendant to relinquish the protection of the contractual limitations period could be reasonably inferred." Id. Thus, as a matter of law, a defendant's apparent willingness to honor a plaintiff's claim is insufficient to prove waiver. See also Silverstein Properties, Inc. v. Webber, Jackson & Curtis, Inc., 480 N.Y.S.2d 724, 726 (N.Y. App. Div. 1984), aff'd, 482 N.E.2d 906 (N.Y. 1985) (holding that evidence of landlord's willingness to address merits of tenant's claim, after time allowed for claim by contract had expired, is insufficient to support reasonable inference of waiver).

12

Galin and Petropak allege only that they had reason to believe that MCI would entertain their claims. The letters from MCI on which Galin and Petropak rely are representative. In one of these letters, MCI's agent, Richard Yeats, reminded Galin and Petropak, "Timely submittal of claims and back-up will facilitate the contract close out." Yeats noted in another letter that "MCI has stressed making... changes [in the terms of the contract] as they occur, not at the end of the contract which makes negotiations and contract close laborious." While these letters suggest lenience in enforcing the notice requirement, they offer no basis for inferring that MCI deliberately waived that requirement. Because Galin and Petropak offered nothing to support a finding of waiver, invoking waiver was insufficient to defeat summary judgment.

## E.  Evidence of Settlement

Galin and Petropak also contest the ruling of the district court that evidence of the settlement process was inadmissible. Galin and Petropak wished to use MCI's attempt to settle as proof of the limited scope of the releases Galin and Petropak signed and as evidence that MCI waived the notice provision of the contract. As we hold that the releases are unambiguous on their face, evidence of any attempts by MCI to settle are not relevant. See Gilbert Frank Corp., 520 N.E.2d at 514. We need not address the issue of admissibility.

AFFIRMED.

13