801 So.2d 476 (2001)
William J. ALBACH and Richard J. Dodson
v.
John KENNEDY, in his capacity as Secretary of the Louisiana Department of Revenue and Administrator of Unclaimed Property Pursuant to R.S. 9:152 and the Uniform Disposition of Unclaimed Property.
No. 2000 CA 0636.
Court of Appeal of Louisiana, First Circuit.
August 6, 2001.
Writ Denied October 12, 2001.
*477 W. Steven Mannear, Kenneth H. Hooks, III, Baton Rouge, Louisiana, for William J. Albach and Richard J. Dodson, plaintiffs/appellees.
*478 Tammy D. Weaver, Brace B. Godfrey, Jr., Baton Rouge, Louisiana, for Louisiana Department of Revenue, defendant/appellant.
BEFORE: PARRO, FITZSIMMONS, and GUIDRY, JJ.
GUIDRY, Judge.
In this class action litigation, the State appeals a partial summary judgment holding it obligated to pay the owners of unclaimed property 5% interest pursuant to Louisiana's Uniform Unclaimed Property Act of 1997, La.R.S. 9:151, et seq. (the UPA).[1] After a thorough review of the record and applicable law, we affirm.

Procedural Background
The plaintiffs, William J. Albach and Richard J. Dodson, individually and on behalf of a class of similarly situated individual owners of unclaimed property in the state's possession, filed suit against John Kennedy, in his capacity as Secretary of the Louisiana Department of Revenue and Administrator of unclaimed property[2] (the State), alleging it failed to pay them 5% annual interest on their unclaimed property while it was in the state's possession, in violation of the UPA. The class was certified by the trial court pursuant to La. C.C.P. art. 591(A) and (B)(1)(b) and (3) by way of judgment dated January 28, 1999. Pursuant to that judgment, the class consists of all persons who were owners of property that was surrendered to the State prior to July 10, 1986 (the effective date of the UPA), if (a) the property was interest-bearing to the owners on the date of surrender by the holder to the administrator of unclaimed property, and (b) the property was recovered by the owner but the state failed to pay or accrue interest thereon, including, but not limited to, owners of interest-bearing savings accounts, matured certificates of deposit, matured savings certificates, Christmas club accounts and utility deposits. The class also includes all owners of property which was surrendered to the administrator after the effective date of the UPA when that property was interest-bearing at the time of surrender to the state. This portion of the class includes owners who have yet to make a claim for the return of their property which is currently in the possession of the state.
During extensive discovery, plaintiffs moved for a partial summary judgment on the issue of liability only. The motion was granted and the judgment was certified by the trial court as a final judgment for purposes of appeal. The state has appealed that judgment.

Applicable Law
Louisiana's Uniform Unclaimed Property Act derives from the uniform law proposed initially in 1954, revised in 1966 and again in 1981. In Act 146 of 1972, the Louisiana legislature enacted an adaptation of the 1954 Uniform Law; in Act 829 of 1986, Louisiana adopted the 1981 revision. Louisiana Health Service and Indemnity Company v. Tarver, 93-2449, p. 3 (La.4/11/94), 635 So.2d 1090, 1092. The most common modern form of unclaimed property legislation is exemplified by the 1954 and 1981 versions of the uniform Act. These are escheat laws: holders of property that is deemed abandoned by virtue of its having been unclaimed for a certain period of time are required to report its existence to the state. If the owners are *479 not found, the property is turned over to the state, which holds it in perpetual custody for the missing owners. The primary rationale behind the legislation is its use as a revenue raising device. Pending a claim by the missing owner, the state receives the use of the property as well as any income that it may provide. The law reflects a policy that unclaimed property should benefit the general public rather than the holders of the property. Louisiana Health Service and Indemnity Company v. McNamara, 561 So.2d 712, 716 (La.1990).
In the 1986 revision, the Louisiana legislature enacted a provision mandating the payment of 5% interest per year on property that was bearing interest on the date it was surrendered to the state, to accrue when the property is delivered to the administrator and ceasing on the earlier of the expiration of ten years after delivery or on the date the property is returned to the owner. By Acts 1997, No. 809 § 1, effective July 10, 1997, the law was amended and reenacted as La.R.S. 9:151 to 9:181, the Uniform Unclaimed Property Act of 1997, and constitutes the law as it exists today. The requirement that the administrator pay interest on previously interest-bearing property is now found in R.S. 9:163 and provides in pertinent part as follows:
If the property was interest bearing to the owner on the date of surrender by the holder, the administrator shall pay interest at a rate of five percent a year or any lesser rate the property earned while in the possession of the holder. Interest begins to accrue when the property is delivered to the administrator and ceases on the earlier of the expiration of ten years after delivery or the date on which payment is made to the owner. Interest on interest bearing property is not payable for any period before the effective date of this Chapter, unless authorized by law superseded by this Chapter.
Based on a clear reading of the statute, the trial court found the class members were entitled to receive the statutorily mandated 5% interest on their unclaimed property.

Notice to Potential Class Members
In its first assignment of error, the State contends the trial court erred in granting plaintiffs' motion for summary judgment by ruling on the common issues of liability prior to notice being given to potential class members as required by La.C.C.P. art. 592(B)(1). The notice requirement of La.C.C.P. art. 592(B), applicable to any class action maintained under article 591(B)(3),[3] protects potential class members by affording them notice and a reasonable opportunity to exercise an option to be excluded from the class or to join in the action "as soon as practicable after certification" and in any event, prior to a "commencement of the trial on the merits of the common issues." La.C.C.P. art. 592(B)(1).
Although the record before us is devoid of any evidence whatsoever pertaining to notice, we find it unnecessary to address this issue because we find that the State has no right to appeal based on this alleged infraction. An action can be brought only by a person having a real and actual interest which he asserts. La.C.C.P. art. 681. Insofar as the notice requirement of *480 La.C.C.P. art. 592(B)(1) is designed to protect the due process rights of potential class members, the State has no interest in ensuring that those requirements are met. See generally, Sanders v. Gore, 95-660, p. 16 (La.App. 3rd Cir.7/10/96), 676 So.2d 866, 875, writ denied, 96-2072 (La.11/15/96), 682 So.2d 762. Nor can the State show that it has been prejudiced in any way by the alleged failure to provide notice to potential class members prior to the trial court's ruling on the liability issue. Therefore, the state has no right to appeal the summary judgment on the basis of an alleged violation of the notice requirement. See, Conrad v. Swiss Chalet Picnic Grounds & Catering Service, 96-606, p. 4 (La.App. 5th Cir.12/30/96), 686 So.2d 1055, 1058, writ denied, 97-0299 (La. 3/21/97), 691 So.2d 87. Accordingly, this assignment of error is without merit.

Perempted Claims
In its second assignment of error, the state claims the trial court erred in rendering a judgment which would provide interest payments on perempted claims. The procedure for filing claims to recover unclaimed property from the state is set forth in La.R.S. 9:167 and 168.
La.R.S. 9:167 provides, in pertinent part:
A. A person, excluding another state, claiming an interest in property paid or delivered to the administrator may file a claim on a form prescribed by the administrator and verified by the claimant.
B. Within ninety days after a claim is filed, the administrator shall allow or deny the claim and give written notice of the decision to the claimant. If the claim is denied, the administrator shall inform the claimant of the reasons for the denial and specify what additional evidence is required before the claim will be allowed. The claimant may refile the claim under Subsection A of this Section or maintain an action under R.S. 9:168.
La.R.S. 9:168 provides:
A person aggrieved by a decision of the administrator or whose claim has not been acted upon within ninety days after its filing may maintain an action de novo to establish the claim in a court of competent jurisdiction in this state, naming the administrator as a defendant. The action shall be brought within ninety days after the decision of the administrator, or, if the administrator has failed to allow or deny the claim, within one hundred eighty days after its filing.
The state maintains this action for the payment of interest, as to the class members who claimed and received their property more than ninety days prior to the filing of this lawsuit, is perempted pursuant to La.R.S. 9:168. In a separate writ application, Dodson v. Crawford, 00-CW-0867 (La.App. 1st Cir.6/29/00) (unpublished writ action), which this court previously referred to the merits in the instant appeal, the state argues specifically that the claim of plaintiff, Albach, filed more than ninety days after his claim for interest on his recovered property was denied by the Administrator, was perempted.

Albach's Claim
With regard to Albach's claim, the record reveals that on January 2, 1998, Albach filed the proper claim forms with the department claiming to be the owner of unclaimed property in the Administrator's possession, an interest bearing savings account which had been on deposit at Hibernia National Bank, and requesting payment of the monies due him. On January 23, 1998, Albach received a letter from the department, informing him that he was the rightful owner of the property claimed, together with a check in the amount of the funds transferred to the department by *481 Hibernia National Bank. Albach immediately began calling the office of the Administrator requesting the payment of interest on the funds returned to him. By way of letter to Albach dated February 6, 1998, the Administrator informed him that the department did not pay interest on any property it received prior to July 10, 1986; therefore, he would not be receiving interest. Albach continued calling the department and requesting the payment of interest. By letter dated March 10, 1998, the Administrator denied the claim, attached a copy of a portion of the act showing its effective date of July 10, 1986, and stated "this matter is closed." Albach filed the petition in this action on May 22, 1998. The state filed an exception of peremption.
The trial court found that a "decision" to deny Albach's claim was not made until the March 19, 1998 letter, in which the issue was laid to rest by the statement "this matter is closed." Thus, the trial court denied the exception, finding that the petition, filed within ninety days from the date of the Administrator's decision, was timely. The state contends the trial court erred, and maintains the Administrator's "decision" to deny Albach's claim was made as early as January 23, 1998, when his property was returned to him without interest. In any event, the state maintains that the letter dated February 6, 1998, denying Albach's claim for the payment of interest, constitutes the latest date that a "decision" denying the claim for interest was made, thus, triggering the ninety-day peremptive period.
The trial court's denial of the exception was based on its factual finding regarding the date of the Administrator's "decision" to deny Albach's claim. In making this factual determination, the trial court stated,
The February 6th letter explains to Mr. Albach we cannot pay interest. However, it is not until the March 19th letter that he's told that this matter is closed. So the March 19th letter would be the denial of the claim under 9:168.... June 19th would have been the 90-day period in which to file suit. The suit was filed May 22nd. So it would be timely filed.
We cannot say the trial court manifestly erred in determining that the letter of March 19, 1998 was the "decision" of the Administrator triggering the ninety-day period pursuant to La.R.S. 9:168.
At the hearing on the exception, Edith Gibson and Katherine M. Smith, revenue auditors who were involved in Albach's claim, each testified that the "decision" to deny Albach's claim for interest was made on January 23, 1998, when his claim for the return of his property was granted and the funds were refunded to him. According to them, that decision was final and was not re-opened or reconsidered thereafter. However, our review of the record reveals sufficient evidence to support the trial court's finding that the "decision" was not made until a later date. The January 23, 1998 letter simply informed Albach that he was the rightful owner of the property and transmitted the return of the funds; it is completely silent regarding interest. At the end of this letter, the department stated, "Please feel free to contact our Department at any time if we can be of further help to you. We are here to serve you and we thank you for the opportunity to do so." Likewise, at the end of the February 6, 1998 letter that informs Albach that prior to July 1986, interest was not paid by the department, the department states, "If you have any further questions, please contact our office." In contrast, at the end of the March 19, 1998 letter, to which the department attached the first page of Acts 1986, No. 829, § 1, amending and reenacting R.S. *482 9:151 to 9:182, as well as copies of the statute relevant to the payment of interest, the department states, "This matter is closed. There are no other funds in your name to claim."
In light of the ongoing telephone requests and inquiries made by Albach, the equivocal nature of the January and February letters, inviting further questions and/or contact, and especially when compared with the "closure" expressed in the March 19, 1998 letter, we simply cannot say the trial court erred in concluding the decision was made on March 19, 1998, and the suit filed within ninety days thereof, on May 22, 1998, was timely. Additionally, we note that under our law, prescriptive and peremptive statutes are to be strictly construed against prescription and peremption and in favor of the claim that is said to be extinguished. Of the possible constructions, the one that maintains enforcement of the claim or action, rather than the one that bars enforcement, should be adopted. Louisiana Health Service and Indemnity Company v. Tarver, 93-2449 at pp. 11-12, 635 So.2d at 1098; see also Security Center Protection Services, Inc. v. All-Pro Security, Inc., 94-1317, p. 5 (La.App. 4th Cir.2/23/95), 650 So.2d 1206, 1209-10; Bruyninckx v. Bratten, 554 So.2d 247, 248 (La.App. 3rd Cir.1989) (applying the foregoing interpretive principles to peremption statutes).

Unidentified Class Members' Claims
Similar to its arguments regarding Albach's claim, the state contends that the claims for interest by all class members who claimed and effected the return of their property from the Administrator more than ninety days prior to the May 22, 1998 filing date of this lawsuit are perempted pursuant to La.R.S. 9:168.
The record before us contains no evidence whatsoever regarding the alleged claims of unidentified class members made more than ninety days prior to the filing of this lawsuit. As we noted in our discussion regarding Albach's claim, the letter sent by the state informing him that he was the rightful owner of certain unclaimed property and transmitting therewith a check for the unclaimed property, did not, in and of itself, constitute a "decision" of the department regarding the payment of interest on said claim. There is no proof in the record to indicate that the claims of the unidentified class members included a request for the payment of interest thereon, nor is there any proof that any kind of "decision" was reached and communicated to these class members regarding these alleged claims for interest. Thus, the record is devoid of any proof of the date on which the preemptive period was "triggered" and began to run. Absent such evidence, there is no basis in the record upon which to hold that any claims by unidentified class members have been perempted. Accordingly, the trial court did not err in failing to grant the state's exception of peremption.

Utility Deposits/Louisiana Public Service Commission Jurisdiction
The trial court also found that utility deposits, which are required by La.R.S. 9:154(A)(12) to be surrendered to the Administrator if unclaimed by the customer for one year after becoming refundable to the apparent owner, are deemed to be interest-bearing when delivered to the Administrator, and accordingly, the owners thereof are entitled to interest payments as provided by La.R.S. 9:163. The state contends the trial court erred in so finding, because evidence in the record established that these deposits, in fact, were not bearing interest at the time of surrender to the Administrator by the utility *483 companies. The state also contends that the obligation of the utility company to pay interest on held deposits is a legal question solely within the jurisdiction of the Louisiana Public Service Commission (LPSC). According to the state, interest on utility deposits is an expense related to a regulated utility's business costs and is reflected in the fixing of rates approved by the LPSC, whose jurisdiction extends to all matters arising out of service by regulated entities.
Louisiana Constitution Art. IV, § 21(B) vests in the LPSC jurisdiction to regulate all common carriers and public utilities as follows:
(B) Powers and Duties. The commission shall regulate all common carriers and public utilities and have such other regulatory authority as provided by law. It shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties, and shall have other powers and perform other duties as provided by law.
"This provision gives the Commission constitutional jurisdiction over public utilities and has been interpreted as granting the Commission independent and plenary power to regulate public utilities.... [T]he legislature's acts or omissions can not subtract from the Commission's exclusive, plenary power to regulate all common carriers and public utilities." Global Tel*Link, Inc. v. Louisiana Public Service Commission, 97-0645, pp. 6-7 (La.1/21/98), 707 So.2d 28, 33 (citations omitted).
Louisiana Revised Statute 45:1163(A)(1) provides that the commission "shall exercise all necessary power and authority over any ... local public utility for the purpose of fixing and regulating the rates charged or to be charged by and service furnished by such public utilities." The extent of the Commission's power and authority expressly includes "all matters and things connected with, concerning, and growing out of the service ... rendered by such public utility...." La.R.S. 45:1164(A).
Pursuant to these regulatory powers, the Commission has exclusive jurisdiction to fix or change any rate to be charged by a public utility. Entergy Gulf States, Inc. v. Louisiana Public Service Commission, 98-1235, p. 2 (La.4/16/99), 730 So.2d 890, 894. This jurisdiction extends to all matters which principally involve the right to fix and regulate rates charged by and services furnished by public utilities. City of Plaquemine, City Light and Water Plant v. Louisiana Public Service Commission, 96-1417, p. 6 (La.1/14/97), 685 So.2d 1074, 1077-78.
The basis for the trial court's deeming the deposits to be interest bearing at the time of surrender to the Administrator is statutory. Louisiana Revised Statute 45:848 governs the payment of interest and return of customer deposits by the utility companies that secure them. It provides:
Whenever any person engaged in furnishing gas, electricity or water shall demand of its patrons a cash security to protect the furnisher ... from loss by reason of extending to such patron's ... service, the furnisher shall pay to that patron, interest at the rate of five per cent per annum upon the amount of the deposit so long as it continues to hold or exact the deposit. The balance of the deposit together with earned interest shall be returned to the depositor, on demand whenever the service is discontinued, and any refusal or neglect to return the balance shall subject the furnisher... to the penalty of paying the consumer ten per cent per annum interest upon deposit so retained after demand. (emphasis added).
However, the state introduced the affidavits of utility companies personnel as well *484 as that of Edward L. Gallegos, the Utilities Administrator and Chief Engineer for the LPSC and Benjamin C. Spann, a Department of Revenue (unclaimed property division) employee establishing that, despite the dictates of the foregoing provision, it is the common practice of the utility companies to cease paying or accruing interest on the deposit once an account is closed (utility service is discontinued), and the amount of the deposit and interest accrued is then mailed to the customer. If the refund is undeliverable, the funds are considered unclaimed property after the passage of one year, pursuant to La.R.S. 9:154(A)(12). However, during this one-year interim, the utility company does not accrue interest. Therefore, as a matter of fact, the deposits are not interest-bearing at the time of surrender by the holder. The state contends, therefore, that La.R.S. 9:163 is inapplicable.
In support of its contention that the determination of when the deposits cease to be interest bearing is a legal question within the exclusive jurisdiction of the LPSC, the state's affidavits also establish that the foregoing practice related to the accrual of interest on deposits has been incorporated into the utility companies' tariffs, which were accepted and approved by the LPSC. The state maintains that the LPSC's approval of the utility companies' tariffs implies that the practice of ceasing to accrue interest at the time of discontinuance of service is in compliance with applicable LPSC rules, regulations, orders and decisions.
However, the record before us does not contain any evidence that the LPSC has exercised its ratemaking authority to authorize the cessation of such interest accrual on withheld utility deposits; thus we need not even reach the issue of whether the LPSC may, in its exercise of ratemaking authority, supercede by regulation the statutory mandate of La.R.S. 45:848 prohibiting the cessation of those payments. The only evidence in the record bearing on this issue is Commission General Order entitled "In Re: Interest on Customer Deposits" dated January 20, 1977, in which the Commission, mindful of the statutory (La.R.S.45:848) provision mandating a payment of 5% interest on deposits, finds 5% to be no longer appropriate ("having been set by Act 297 of 1910") and ordering an increase to 6%. (The record also contains General Order dated January 1, 1992, superceding the preceding order, and returning the interest rate to 5%.) Although the 1977 order expressly provides that the Commission has recognized the payment of interest on deposits as a legitimate charge against revenues for ratemaking purposes, the record is still devoid of any evidence of any rule, regulation, or order by the LPSC providing that the interest accrual cease at discontinuance of service in contravention of La.R.S. 45:848. (As noted earlier, in the absence of any such regulation, we need not address the more troubling question of whether such regulation would constitutionally fall within the LPSC's ratemaking authority.) The fact that the payment of interest on deposits is considered by the LPSC in the exercise of its ratemaking authority does not constitute proof that the duration of such interest payments is a matter that has been regulated by the LPSC. Absent any proof of such regulation promulgated within the scope of the LPSC's ratemaking authority, the state has not provided any basis for the utility companies' noncompliance with statutory law.
Furthermore, we find no merit in the state's argument that La.R.S. 9:163 is inapplicable because the deposits, in fact, were not interest-bearing at the time of surrender. The fallacy with this argument is that the deposits are interest-bearing as a matter of law, i.e., La.R.S. 45:848, for as *485 long as they are held by the utility company. The evidence in the record establishes that the utility companies may be violating the law to the extent that they cease accruing and crediting interest on utility deposits when service is discontinued. This interpretation of the law by the utility companies does not relieve the state of its statutory obligation to pay interest pursuant to La.R.S. 9:163 on deposits that would be interest-bearing but for the utility companies' interpretation of La.R.S. 45:848. Accordingly, the trial court did not err in applying La.R.S. 45:848 and deeming the deposits to be interest-bearing at the time of surrender to the Administrator.
For all of the foregoing reasons, the judgment of the trial court granting summary judgment as to liability is affirmed; costs of this appeal in the amount of $3,218.30 are assessed to the state.
AFFIRMED.
PARRO, J., concurs in the result and assigns reasons.
FITZSIMMONS, J., dissents, and assigns reasons.
PARRO, J., concurring in the result.
The district court judgment states the plaintiffs are "entitled" to be paid interest in accordance with the provisions of LSA-R.S. 9:163. However, in light of our discussion regarding peremption, the right of any individual to demand actual payment of any interest may be precluded by LSA-R.S. 9:168.
I respectfully concur.
FITZSIMMONS, Judge, dissents and assigns reasons.
I respectfully dissent from the majority's legal conclusion that unclaimed utility deposit refunds were interest-bearing after they had been surrendered to the Administrator of Unclaimed Property. There exists a material issue of fact as to whether the utility deposit refunds were bearing interest on the date they were surrendered to the Administrator; therefore, the partial summary judgment should not have been granted.
NOTES
[1] The trial court judgment expressly provides that it constitutes a final judgment and that there is no just reason for delay in taking an appeal, pursuant to La.C.C.P. art. 1915B.
[2] By way of an order dated May 12, 1999, Brett Crawford, Kennedy's successor in office, was substituted as party defendant.
[3] The record reveals the trial court expressly found that the questions of law or fact common to the members of the class predominate over questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy; thus, the class was maintained pursuant to article 591(B)(3), and to this extent, the notice requirement of 592(B) is applicable.