Dear Mr. Napper:
On behalf of the State Treasurer, acting as the Administrator (the "Administrator") under the Louisiana Uniform Unclaimed Property Act (the "Act"), La.R.S. 9:151, et seq., you requested the opinion of this office. Your questions pertain to the authority of the Administrator to enter into a contract with an attorney to enforce the provisions of the Act on a contingency basis, that is, on a percentage of property and funds recovered.
In Meredith v. Ieyoub, 96-1110 (La. 9/9/97), 700 So.2d 478, the Louisiana Supreme Court held that, absent Constitutional or statutory authorization, contingency fee contracts between the Attorney General and private attorneys to represent the state in enforcing the state's environmental laws were illegal and violated state law. Specifically, the Supreme Court noted that the fiscal affairs of the state are matters pertaining exclusively to the legislature and that the payment of outside attorneys to prosecute legal claims on behalf of the state is a fiscal matter. Thus, the Supreme Court found that, under the separation of powers doctrine, unless the Attorney General had been expressly granted the power in the constitution to pay outside counsel contingency fees from state funds or the legislature had enacted such a statute, then the Attorney General had no such power. The Supreme Court found no such grant of power in the constitution or by statute. See also, Ieyoub v.W.R.Grace, 1997-728 (La.App. 3 Cir. 3/6/98), 708 So.2d 1227. While these cases specifically apply only to the Attorney General, the holding is applicable to all executive branch agencies.
The statutory authority for the retention of counsel under the Act is contained in La.R.S. 9:174 and 175, which provide in pertinent part as follows:
"§ 174. Enforcement
 The administrator may maintain an action in this or another state to enforce this Chapter. The court may award reasonable attorney fees to the prevailing party."
 "§ 175. Interstate agreements and cooperation; joint and reciprocal actions with other states; confidentiality
 A. The administrator may enter into an agreement with another state to exchange information relating to abandoned property or its possible existence. The agreement may permit the other state, or another person acting on behalf of a state, to examine records as authorized in R.S. 9:172. . .
 B. The administrator may join with another state to seek enforcement of this Chapter against any person who is or may be holding property reportable under this Chapter.
* * *
 D. The administrator may request that the attorney general of another state or another attorney commence an action in the other state on behalf of the administrator. With the approval of the attorney general of this state, the administrator may retain any other attorney to commence an action in this state on behalf of the administrator. This state shall pay all expenses, including attorney fees, in maintaining an action under this Subsection. With the administrator's approval, the expenses and attorney fees may be paid from money received under this Chapter. The administrator may agree to pay expenses and attorney fees based in whole or in part on a percentage of the value of any property recovered in the action. Any expenses or attorney fees paid under this Subsection may not be deducted from the amount that is subject to the claim by the owner under this Chapter." (Emphasis added)
Accordingly, the legislature has authorized the Administrator to retain counsel to commence actions on behalf of the Administrator, with the expenses and attorney fees to be based on a percentage of the value of the property recovered, or a contingency. This authority would be for both interstate and intrastate actions.
You next ask, what conditions and approvals are required to fully authorize the Administrator to enter into such a contractual arrangement. As set forth in La.R.S. 9:175(D), the approval of the Attorney General is required. The approval of the Department of Civil Service is also required. See, Civil Service Commission of the City ofNew Orleans v. The City of New Orleans, 2002-1812 (La. 9/9/03),854 So.2d 322.
Generally, legal services contracts are subject to review and approval by the Office of Contractual Review pursuant to the provisions of the Professional, Personal, Consulting, and Social Services Procurement Code (the "Professional Procurement Code") found at La.R.S. 39:1481, et seq. However, the Professional Procurement Code only applies to the "expenditure of public funds . . . by the executive branch of this state for professional, personal, consulting, and social services procurement." La.R.S. 39:1482(A).
If the funds for the payment of the attorney fees due under a contingency fee contract between the attorney and the Administrator comes from funds appropriated by the legislature or are otherwise deemed to be public funds, the contract would fall within the provisions of the Professional Procurement Code and would also be subject to the approval of the Office of Contractual Review, and the Commissioner of Administration under La.R.S. 49:258.
If, however, the monies to be used to pay the attorney fees is paid from the Unclaimed Property Fund, those monies are not public/state funds and thus are not subject to the Professional Procurement Code.
As stated in pertinent part in Albach v. Kennedy, 2000-0636 (La.App. 1 Cir. 8/6/01) 801 So.2d 476:
 "Louisiana's Uniform Unclaimed Property Act derives from the uniform law proposed initially in 1954, revised in 1966 and again in 1981. In Act 146 of 1972, the Louisiana legislature enacted an adaptation of the 1954 Uniform Law; in Act 829 of 1986, Louisiana adopted the 1981 revision. Louisiana Health Service and Indemnity Company v. Tarver, 93-2449, p. 3 (La. 4/11/94), 635 So.2d 1090, 1092. The most common modern form of unclaimed property legislation is exemplified by the 1954 and 1981 versions of the uniform Act. These are escheat laws: holders of property that is deemed abandoned by virtue of its having been unclaimed for a certain period of time are required to report its existence to the state. If the owners are not found, the property is turned over to the state, which holds it in perpetual custody for the missing owners. The primary rationale behind the legislation is its use as a revenue raising device. Pending a claim by the missing owner, the state receives the use of the property as well as any income that it may provide. The law reflects a policy that unclaimed property should benefit the general public rather than the holders of the property. Louisiana Health Service and Indemnity Company v. McNamara, 561 So.2d 712, 716 (La. 1990). (Emphasis added)
The Act was revised in 1986 and amended and reenacted in 1997 and currently provides in La.R.S. 9:162(B) as follows:
 "Upon payment or delivery of property to the administrator, the state assumes custody and responsibility for the safekeeping of the property. . ." (Emphasis added)
The monies are held in a custodial or trust capacity by the State of Louisiana and thus are not public funds subject to the Professional Procurement Code.
Trusting this adequately responds to your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ________________________________ MARTHA S. HESS Assistant Attorney General
RPI/MSH