IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 8, 2008

Charles R. Fulbruge III
Clerk

No. 07-30905
Summary Calendar

BERNHARD MECHANICAL CONTRACTORS, INC.

Plaintiff-Appellant

V.

ST. PAUL COMPANIES; ST. PAUL FIRE & MARINE INS. CO.

Defendant-Appellee

Appeals from the United States District Court
for the Western District of Louisiana
Case No. 6:04-0439

Before HIGGINBOTHAM, BARKSDALE, AND HAYNES, Circuit Judges.

PER CURIAM:[*]

Bernhard Mechanical Contractors, Inc. (BMC) appeals an adverse summary judgment on its detrimental reliance, breach of contract, and bad faith breach of contract claims against St. Paul Fire & Marine Insurance Company and St. Paul Companies (collectively St. Paul). The district court determined that BMC's claims were peremptied by LA. REV. STAT. § 9:5606 (1991), which requires plaintiffs to bring actions against insurance agents arising out of an

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

engagement to provide insurance services within one year of the alleged misconduct or the discovery thereof.[1] BMC brought no claims against Gene Pool, St. Paul's purported agent,[2] and did not otherwise allege misconduct on his part. Nevertheless, the district court held that section 9:5606 applied because Pool's conduct was "essential to" BMC's claims against St. Paul and, under Louisiana law, an insurance agent's actions are imputed to the insurer. We disagree that section 9:5606 applies to claims against an insurer merely because the agent's conduct, which the plaintiff does not contend is wrongful, is imputed to the insurer. Therefore, we vacate the district court's judgment and remand the case for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises from St. Paul's declination to bond BMC's work on the Louisiana State University (LSU) cogeneration project.[3] BMC is a contractor that specializes in the installation of comprehensive plumbing, heating, and cooling systems for large construction projects. In 1998, BMC employed an independent bonding broker, Burch, Marcus, Pool, Krupp, Daniel & Babineaux (Burch Marcus), to secure its construction bonds. Gene Pool served as BMC's primary contact at Burch Marcus. After investigating potential sureties for BMC, Pool settled on St. Paul. According to St. Paul, "Pool's attempt to match BMC and St. Paul was perfected when BMC executed the [general indemnity agreement]."

---

[1] BMC does not contend that the "discovery" date is different than the "misconduct" date.

[2] St. Paul contests that Pool acted as its agent in this transaction. However, in the motion granted by the district court, St. Paul stated: "any action against St. Paul based on the imputed actions of the broker is time-barred." Because St. Paul's peremption motion relied upon the premise that the broker's actions would be imputed to it, we assume without deciding that Pool acted as BMC's agent for the purposes of this opinion.

[3] The LSU cogeneration project is a multi-million dollar undertaking intended to substantially reduce the University's utility costs.

In late 2000, LSU issued a request for proposals to build the cogeneration project. BMC submitted a proposal approximately forty-five days later. A necessary inclusion in that proposal was a letter from St. Paul regarding a bond for the project, which BMC contends Pool signed as St. Paul's agent.[4] The letter served to show that BMC could obtain a bond if LSU awarded it the project. BMC further contends that St. Paul "actively participated in the contractual negotiations between BMC and LSU and directly influenced the negotiations." BMC ultimately obtained the project but, on March 12, 2002, St. Paul declined to issue the bond for what BMC contends was a trumped up reason. This suit followed on February 13, 2004, approximately twenty-three months after St. Paul officially declined to issue the bond.

BMC filed suit in the United States District Court for the Western District of Louisiana, bringing claims against St. Paul for detrimental reliance, breach of contract, and bad faith breach of contract. BMC did not name Pool as a defendant, and its complaint alleges no wrongdoing on his part. The parties filed cross-motions for summary judgment. In its partial summary judgment motion on BMC's detrimental reliance claim, St. Paul argued: (1) that Pool made no promise upon which anyone could rely; (2) if Pool made a promise, it could not be imputed to St. Paul; and (3) if Pool's "promise" could be imputed to St. Paul, the peremptory bar of section 9:5606 applied. The district court denied St. Paul's detrimental reliance summary judgment in its entirety and set the case for trial.

On the fourth day of trial, the district court declared a mistrial after disqualifying three jurors. The district judge then recused himself and the case was reassigned to another district judge. That judge reopened summary

---

[4] BMC's most recent complaint alleges: "On February 20, 2001, Gene Pool, St. Paul's agent, issued a letter to LSU, stating that 'we [St. Paul] are prepared to issue the requisite performance and payment bonds should they [BMC] be the successful bidder.'"

judgment and instructed the parties to point to any trial testimony that might have resolved issues of fact that remained after the first round of summary judgments. The parties again filed cross-motions for summary judgment.

The case was then reassigned to a third district judge of the Western District of Louisiana. That judge set the pending summary judgment motions for hearing and ordered the parties to file any opposition briefs fifteen days before the hearing. During a subsequent pretrial conference, however, the district judge referred the pending summary judgment motions to trial and set a date for the second trial.

At the conclusion of the first day of trial, the district judge informed the parties that he had reviewed their summary judgment motions and was "very disturbed" by the peremption issue. He informed the parties that they should be prepared to argue the issue the following morning.

The next morning, the district judge indicated that he was prepared to issue "a Rule 50 in favor of the defendant, holding that St. Paul is a beneficiary of [section] 9:5606 under the facts of this case," but would give the parties an opportunity to convince him otherwise. He noted that no court had specifically addressed the applicability of section 9:5606 to an insurance company. Nevertheless, he cited the parties to the Louisiana Court of Appeals decision in Klein v. Am. Life & Cas. Co., 858 So. 2d 527 (La. Ct. App. 2003), a case in which the plaintiffs contended that section 9:5606 did not apply to their claims against an insurance company. He noted that in response to this proposition the court, "in almost throwaway language," proceeded to hold "[b]ecause the acts of an insurance agent are generally imputable to the insurer he represents we conclude [section 9:5606's] peremptive periods apply to the claims against [the insurer] under the facts of this case."

During the hearing that ensued, the judge repeatedly asked BMC's counsel whether Pool's agency for St. Paul was "essential to" BMC's claims. After

receiving a qualified concession, the judge gave the parties fifteen days to brief the legislative history of section 9:5606. Approximately one month later, he entered a judgment dismissing BMC's claims with prejudice "for the reasons orally assigned in open court."[5] This appeal followed.

## II. DISCUSSION

BMC raises a host of contentions challenging the procedural propriety of the district court's judgment. We need not address those issues, however, as we agree with BMC that section 9:5606 does not apply to the facts of this case as currently pleaded.

The district court determined that the peremptory bar of section 9:5606 applied to BMC's claims against St. Paul, an insurance company, because its agent's actions were "essential to" BMC's claims. The statute reads in relevant part:

> No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered.

LA. REV. STAT. § 9:5606.

The dates underlying the summary judgment are not in dispute. St. Paul informed BMC of its declination to issue the LSU bond no later than March 12, 2002. BMC sued twenty-three months later. BMC brought claims solely against St. Paul; Pool is not a named defendant. BMC does not allege that Pool engaged

---

[5] BMC contends that the district court improperly invoked FED. R. CIV. P. 50 in dismissing its case. We do not address this contention, however, as the procedural history of this case and the substance of the district court's judgment indicate that the court acted under FED. R. CIV. P. 56, and we choose to construe its judgment accordingly. See Galin Corp. v. MCI Telecomms. Corp., 12 F.3d 465, 468 (5th Cir. 1994) (treating order as a judgment under Rule 56 even though trial court purported to act under Rule 50(a)).

in any wrongful conduct that can be imputed to St. Paul; rather, BMC alleges that Pool merely facilitated the agreement that St. Paul breached. Thus, we must decide whether the Louisiana rule that an agent's actions are imputed to the insurer operates to extend the peremptory bar of section 9:5606 to claims against an insurer where the actions of the insurer's agent, while not wrongful, are nevertheless "essential to" the claims.[6]

The Louisiana Civil Code sets out rules of statutory construction that guide us in resolving this issue of first impression. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." LA. CIV. CODE art. 9 (1988). If, however, "the language of the law is susceptible of a different meaning, it must be interpreted as having the meaning that best conforms to the purpose of the law." Id. art. 10. "When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." Id. art. 12. Finally, Louisiana courts construe preemptive statutes strictly against preemption "and in favor of the claim that is said to be extinguished." Albach v. Kennedy, 801 So. 2d 476, 482 (La. Ct. App. 2001). Thus, when faced with two possible constructions, courts should favor the one that permits, rather than bars, the action. Id.

Applying these principles, we conclude that the peremptory bar of section 9:5606 does not apply to claims against an insurer merely because those claims rely on imputing the conduct of an agent to the insurer. We base our decision first on the language of section 9:5606. By its terms, section 9:5606 applies only to actions for damages against an "insurance agent, broker, solicitor, or other

---

[6] Given BMC's allegations which, at this stage, must be taken as true–that St. Paul actively participated in the LSU/BMC negotiations and then abruptly declined to issue the bond for a false reason–it is not clear that Pool's conduct was "essential to" the claim.

similar licensee." It is undisputed that an insurance company is neither an insurance agent, broker, or solicitor. While St. Paul contends that it can be considered a "similar licensee," we fail to see the similarity between an insurance agent and an insurance company.

Under basic cannons of statutory construction, the meaning of the general phrase "other similar licensee" must be constricted to the specific class of words which it follows. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 114 (2001) (Under the established interpretative canon of ejusdem generis, "where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." (quoting 2A N. Singer, Sutherland on Statutes and Statutory Construction § 47.17 (1991)). The Louisiana Insurance Code makes a clear distinction between insurance agents and insurance companies. Generally, insurers are required to obtain certificates of authority rather than licenses. See LA. REV. STAT. § 22:34 (1958) (requiring a domestic insurer to obtain a certificate of authority from the commissioner of insurance before transacting business); id. § 22:981 (requiring a foreign insurer to obtain, among other things, a certificate of authority to transact domestic business). In contrast, the Code groups insurance agents, brokers, and solicitors together, see id. § 22:1132(6) (2002), and requires them to obtain a "license." See id. § 22:1132(8). Finally, the Code specifically states that insurers are not required to obtain an insurance agent's license and notes that the phrase "insurer" does not include an insurance company's "officers, directors, employers, subsidiaries, or affiliates." Id. § 22:1134(A). Given this clear statutory distinction between insurers and their agents, brokers, and solicitors, we fail to see how the phrase "other similar licensee" as used in section 9:5606 can be construed to encompass an insurer. Indeed, if the legislature intended section 9:5606 to apply to

insurers, it would have explicitly said so as it has in other statutes throughout the Insurance Code.

At least one court has implicitly recognized the limited scope of section 9:5606. In Preis v. Lexington Ins. Co., 508 F. Supp. 2d 1061 (S.D. Ala. 2007), a plaintiff brought claims against both an insurer and its agents based on the agents' alleged misconduct. Id. at 1078. The court, citing to Klein, held that section 9:5606 perempted the claims against both the agents and the insurer "because the acts of an insurance agent are generally imputable to the insurer he represents." Id. (citations omitted). In so doing, however, the court noted that the plaintiffs' claims against the insurer were derivative of its claims against its agents. Id. Thus, Preis implicitly recognizes that the general imputation rule would not extend the protections afforded by section 9:5606 to an insurer whose agent acted merely as a benign participant in the transaction giving rise to the plaintiff's claim.

Indeed, in each of the cases that St. Paul relies on, the insurer's potential liability arose from the misconduct of its agents rather than its own independent conduct. In Klein, the plaintiffs brought claims for breach of contract, breach of fiduciary duty, negligence, and negligent supervision predicated on the investment advice of the insurer's agent. Id. at 529-30. In Kobeszko v. State Farm Fire & Cas. Co., No. 06-7678, 2007 U.S. Dist. LEXIS 36900 (E.D. La. May 18, 2007), an unpublished opinion, the court specifically noted that the insurer's potential liability arose "through the errors and omissions of [its] agent," and that the plaintiffs did "not allege any improper conduct by [the insurer] apart from the asserted actions and/or omissions of its agent." Id. at *2 (emphasis in original).

Section 9:5606 itself arguably mandates the holdings in Preis, Klein, and Kobeszko. If courts did not impute the protections of section 9:5606 to insurers in cases where their liability arises solely from the misconduct of their agents,

plaintiffs could sue insurers beyond the one-year-preemptive period, leaving insurers with no recourse against their culpable agents. See Life Investors Ins. Co. of Am. v. John R. Young Chevrolet, Inc., 730 So. 2d 519, 520-521 (La. Ct. App. 1999) (noting that a suit for contractual indemnity is a suit for damages and that section 9:5606 prohibits all suits for damages after one year based upon contract or otherwise). But these concerns do not exist where the insurer's potential liability arises solely from its own misconduct and the insurer's agent merely facilitated the underlying transaction.

We do not mean to suggest that a plaintiff can avoid the peremptory bar of section 9:5606 by simply declining to sue an insurer's agent. It is the basis of the insurer's liability—i.e., whether or not the insurer's liability is predicated on the wrongful acts of its agent—and not the style of the case, that determines whether the peremptory bar of section 9:5606 applies to claims against an insurer. Here, the district court granted summary judgment in favor of St. Paul on the mistaken belief that section 9:5606 protected an insurer so long as the actions of the insurer's agent were "essential to" the plaintiff's claims, without more. Thus, its judgment cannot stand on the face of this record.

St. Paul has raised a number of alternative basis for upholding the district court's summary judgment. Given the unusual procedural course by which this judgment arose, however, we find it imprudent to address those claims at this time. See Breaux v. Dilsaver, 254 F.3d 533, 537 (5th Cir. 2001) ("Although this court may decide a case on any ground that was presented in the trial court, we are not required to do so."); cf. FDIC v. Barton, 233 F.3d 859, 865 (5th Cir. 2000) (declining to reach alternative grounds for affirming summary judgment). Here, the district court was in the midst of trying the case when it decided to readdress St. Paul's motion for summary judgment on peremption. It did not do so with the myriad other summary judgment motions previously filed. Thus, in order to provide notice and an opportunity to be heard on any other grounds, we will

decline to address those grounds at this stage.  See Dandridge v. Williams, 397 U.S. 471, 475 n.6 (1970) (noting that "when attention has been focused on other issues, or when the court from which a case comes has expressed no views on a controlling question, it may be appropriate to remand the case rather than deal with the merits of that question in this Court.").  Accordingly, the district court's judgment is VACATED and the case is REMANDED for further proceedings consistent with this opinion.