■ MAXWELL PARTNERS, L.L.C., Appellant, v THE BUILDING STUDIO, LLP, et al., Respondents. [820 NYS2d 253]—

Order, Supreme Court, New York County (Barbara R. Kapnick, J.), entered April 7, 2005, which granted defendants' motion to dismiss the action pursuant to CPLR 3211 (a) (5), reversed, on the law, with costs, the motion denied and the complaint reinstated.

Plaintiff Maxwell Partners, L.L.C. (Maxwell), a medical imaging center, retained an architectural firm, defendant The Building Studio, LLP (TBS) and its principal, defendant architect Michael Goldblum (Goldblum), to provide certain architectural, engineering and expediting services in connection with Maxwell's construction and renovation of a private, specialized medical imaging center at 75 Park Place, New York County.

The medical center was severely damaged on September 11, 2001 and Maxwell retained TBS to oversee restoration of the premises. In June 2002, TBS performed additional work at the premises. Maxwell again contracted with TBS for further work on the premises in June 2003.

By letter dated May 24, 2004, Maxwell replaced TBS as architect before the work based on the June 2003 proposal was completed. At that time, Maxwell's principal, Dr. Mosesson referred to TBS's work performed under the June 2003 proposal as the "Fourth Project."

On May 25, 2004, Maxwell, as releasor, executed a release to TBS, as releasee, in consideration of TBS's payment to Maxwell of $10.00:

"and other good and valuable consideration including a license to use architectural plans issued after December 1, 2003 for construction work at 75 Park Place, New York . . . and a reduction in outstanding professional fees owed to [TBS], receipt

whereof is hereby acknowledged, releases and discharges [TBS] as RELEASEE, RELEASEES partners, shareholders, employees, officers, [etc.] . . . from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises . . . claims, and demands whatsoever . . . from the beginning of the world to the day of the date of this RELEASE *related in any way to the documents being licensed or to the services provided by the RELEASEE to the RELEASOR related to the construction work referenced in the documents.*

"Without limiting the foregoing, this RELEASE applies to all liability, claims, damages, and causes of action, accrued or unaccrued, known or unknown, relating in anyway to or arising out of the above referenced project located at 75 Park Place, New York . . . and includes, but is not limited to, all patent and latent defects and conditions. Additionally, RELEASOR hereby and forever irrevocably and unconditionally waives any and all claims, damages, and causes of action against RELEASEES with regard to the Project, now and in the future, and states that this waiver is adequately supported by consideration given by RELEASEE for this RELEASE as set forth above" (emphasis added).

TBS's attorneys drafted the release and Dr. Mosesson claimed that the underscored language was added at his request. Dr. Mosesson averred that he wanted to narrow the scope of both the release and a related letter agreement by inclusion of the disputed limiting language.

Also executed on the same day (May 25, 2004) was a release of liens and a letter agreement signed by both parties. The May 25 letter agreement, which TBS drafted, provided in pertinent part that the letter agreement is "a part of our release of liabilities and indemnification, as discussed . . . yesterday [i.e., on May 24 when TBS was fired by Maxwell]." The letter agreement provided, inter alia, that Maxwell would indemnify and hold TBS harmless from any claim:

"1. . . . arising out of any use or modification of the construction documents issued by [TBS] after December 1, 2003, by Maxwell or any person or entity that acquires or obtains the plans and specifications from or through Maxwell.

"Additionally . . . Maxwell shall indemnify and hold [TBS] . . . harmless of and from any and/or all liability, damage, loss . . . sustained or incurred by [TBS] as a result of any act or omission of Maxwell or of any designer, consultant, contractors, and/or subcontractors of any tier on the project.

"2. Limitation of Liability

"In recognition of the relative risks and benefits of the project to both Maxwell and [TBS], the risks have been allocated such that Maxwell agrees . . . to limit the liability of [TBS] and [TBS's] sub-consultants, partners, principals, [etc.] . . . to Maxwell, and to all construction contractors . . . in the project, for any and all claims, losses, costs, damages of any nature whatsoever . . . in any way related to the contract documents issued by [TBS] after September 2001 until today . . . and any work carried over into those documents from earlier work, so that the total aggregate liability of [TBS] and its principals, partners, [etc.] . . . shall not exceed $5,000."

The release of liens cross-referenced to both the May 25 letter agreement and the disputed release.

In January 2004, Maxwell commenced an action against TBS and architect Goldblum and asserted three causes of action, namely, breach of contract, architectural/professional malpractice and unjust enrichment. The complaint alleged that the claims against TBS/Goldblum arose in connection with its work performed *prior to September 11, 2001*, and pursuant to the parties' initial February 2000 agreement.

Maxwell claimed that TBS, during its work under the February 2000 agreement, inter alia, (1) grossly underestimated the cost of the construction project; (2) failed to prepare clear, complete and understandable design documents, as well as performance criteria for contractors to bid upon; (3) provided erroneous and incomplete engineering advice; (4) failed to obtain engineering documents from certain contractors; and (5) failed to properly administer, oversee and supervise the project. Maxwell sought a refund of $112,954.29 in fees it paid to TBS for TBS's work on the pre-9/11 construction project, and also sought damages to cover, inter alia, cost overruns and construction delay costs, including overtime fees and higher interest rates.

TBS/Goldblum moved to dismiss the complaint pursuant to CPLR 3211 (a) (5), arguing that the parties had signed a general release which was clear and unambiguous, in that it provided for the release of "any and all claims" pertaining to the overall construction "Project" at 75 Park Place, Manhattan.

Supreme Court granted TBS's motion to dismiss, concluding that the release was clear and unambiguous and provided for a general release, not a limited one. That was error because the court either overlooked or failed to accord any meaning to the limiting terminology that Maxwell's principal, Dr. Mosesson, inserted into the release.

In *Herman v Malamed* (110 AD2d 575, 576-577 [1985]), this

Court held that: if a release contains "specific recitals as to the claims being released," yet also contains an omnibus clause that "all claims and demands whatsoever" are being discharged, "the general words of a release are limited by a recital of the particular claim."

Here, the release unquestionably contains limiting language. A fair reading of the release indicates that claims associated with the "licensed documents" issued on or about December 1, 2003 were deemed to be released. Such limiting language leaves unaffected any claims that could be raised by Maxwell in connection with TBS's pre-9/11 work.

Notably, TBS offers no interpretation of the meaning of the contested language inserted by Dr. Mosesson. TBS focuses only on the general language in the release, and argues that the general language, when viewed to the exclusion of the limiting language, indicates a clear and unambiguous release of all claims related to "the project." TBS concludes that the intent of the parties regarding the scope of the release may not be determined by resort to extrinsic evidence where the release is clear and unambiguous. In essence, TBS argues that the intent of the parties must be gleaned from the four corners of the release.

However, a plain reading of the release indicates the existence of limiting language, but the scope of the work associated with the December 1, 2003 documents and the extent of the work performed by TBS pursuant to those documents is not clear. Moreover, the release twice refers to any and all claims arising under "the project," and the term "project" is not defined by the release. Consequently, issues of fact exist as to the scope of the release.

The extrinsic evidence offered in opposition to the motion does not alter this conclusion. Most of the relevant documents were drafted by TBS and/or its counsel, and they indicate that successive work projects were undertaken pursuant to new proposals and fee arrangements. Moreover, documents that were contemporaneously executed with the release (i.e., the May 25 letter agreement and the release of liens) indicate that the parties viewed the work to have been performed in "tier[s]," and Maxwell agreed to indemnify TBS only as to claims arising "after December 1, 2003." However, it is not clear from the record before us what work TBS performed pursuant to the December 1, 2003 documents, as distinguished from the multiple proposals/agreements that preceded the December 1, 2003 documents. Therefore, the court erred in granting TBS's motion to dismiss the complaint upon finding, as a matter of law, that the release was a general one, without limiting language. Concur—Saxe, Gonzalez and Catterson, JJ.

Buckley, P.J., and Nardelli, J., dissent in a memorandum by Buckley, P.J., as follows: I find the subject release to be clear and unambiguous, and therefore would affirm the order appealed.

Although, as the majority notes, the release does not define the term "project," the letter agreement, signed the same day and specifically made "a part of [the] release of liabilities and indemnification," discussed "any tier on the project." Thus, the term "project" referred to the entire work on the site and cannot be read as limited to a particular phase of the work.

The majority also states that the release is limited by the language inserted by Dr. Mosesson. The first paragraph of the release recites that the consideration includes a license to use certain documents, and then, in Dr. Mosesson's language, releases claims "related in any way to the documents being licensed or to the services provided by the RELEASEE to the RELEASOR related to the construction work referenced in the documents." However, the release continues: "Without limiting the foregoing, this RELEASE applies to all liability, claims, damages, and causes of action, accrued or unaccrued, known or unknown, relating in anyway to or arising out of the above referenced project located at 75 Park Place, New York, New York and includes, but is not limited to, all patent and latent defects and conditions. *Additionally*, RELEASOR hereby and forever irrevocably and unconditionally waives any and all claims, damages, and causes of action against RELEASEES with regard to the Project, now and in the future" (emphasis added). The second paragraph thus enunciates the release of claims other than claims arising out of the licensed documents. That additional language does not render the specific release of claims arising out of the licensed documents meaningless verbiage; rather, the specific language of the first paragraph makes clear that claims pertaining to the consideration itself (the licensed documents) were being released, in addition to claims arising out of the project (every tier of the project).

For the foregoing reasons, I would affirm the order appealed.